**SPRINT SPECTRUM, L.P., Plaintiff,**

v.

**CITY OF MEDINA, Defendant.**

**No. C96–408WD.**

United States District Court,
W.D. Washington.

May 3, 1996.

John Tayloe Washburn, Foster Pepper & Shefelman, Seattle, WA, for plaintiff.

Stewart Andrew Estes, Keating, Bucklin & McCormack P.S., Seattle, WA, Kirk Richard Wines, Kirk R. Wines, Seattle, WA, for defendant.

David A. Miller, Bellevue, WA, for amicus curiae Western Wireless Corporation.

C. James Judson, Davis Wright Tremaine, Seattle, WA, for amicus curiae Nextel Communications, Inc.

## ORDER ON MOTION
## FOR PRELIMINARY
## INJUNCTION

DWYER, District Judge.

This case raises the question whether a city's six-month moratorium on issuing permits for additional wireless communications facilities (such as antenna towers) within its boundaries violates Section 704 of the Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 332(c), or the Omnibus Budget Reconciliation Act of 1993, 47 U.S.C. § 332(c)(3) ("1993 Act").

The defendant City of Medina is a small community of about 3,000 residents in King County, Washington. For several years it has been home to receiving and transmitting facilities for two cellular telephone providers, Cellular One (now AT & T Wireless) and U.S. West New Vector. Medina is about one mile by two and a half miles in area. Situated on the eastern shore of Lake Washington, the City is zoned for low-density residential use, with minimum lot sizes ranging from 16,000 to 30,000 square feet. Chiefly because of its proximity to State Route 520 and the Evergreen Point Floating Bridge, Medina is a prime area for wireless telecommunications providers. It has expressed concern over becoming an "antenna farm."

On February 8, 1996, the President signed into law the TCA, which is designed to increase competition in the telecommunications industry. The TCA provides in relevant part:

SEC. 704. FACILITIES SITING; RADIO FREQUENCY EMISSION STANDARDS.

(a) NATIONAL WIRELESS TELECOMMUNICATIONS SITING POLICY. Section 332(c) (47 U.S.C. § 332(c)) is amended by adding at the end the following new paragraph:

(7) PRESERVATION OF LOCAL ZONING AUTHORITY.

(A) GENERAL AUTHORITY. Except as provided in this paragraph, nothing in this Act shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B) LIMITATIONS.

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

(ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

47 U.S.C. § 332(c).

On February 13, 1996—five days after the TCA became law—the Medina City Council, seeking time to deal with an expected flurry of applications, adopted a six-month moratorium on the issuance of new special use permits for wireless communications facilities. This measure, Resolution No. 236, is due to expire on August 12, 1996. It suspends only the issuance of permits, not the processing of applications.

On March 14, 1996, plaintiff Sprint Spectrum L.P. ("Sprint") filed this lawsuit. The complaint, as amended on April 11, 1996, alleges that Medina's moratorium violates the TCA, the 1993 Act, and several other statutory and constitutional provisions, and seeks an injunction, damages, and other relief.

Sprint, a Delaware limited partnership, is in the business of providing wireless communications services. In June 1995 it purchased for $105.2 million the licensing rights

for a frequency set for the Seattle Major Trading Area, which includes King County and twenty other counties. Sprint plans to operate, by the fourth quarter of 1996, a "regional personal communication system." To do that it needs to install base stations throughout Western Washington. It contends that any delay in its obtaining full coverage in the region—with no geographic gaps—will cause it to lose large amounts of money. Thus, Sprint argues, Medina's moratorium threatens it with irreparable harm.

On April 8, 1996, the Medina City Council at a public meeting adopted a resolution supplementing the February 13 moratorium and reading in part as follows:

THE CITY COUNCIL OF THE CITY OF MEDINA, WASHINGTON does adopt the following findings of fact:

1. The City of Medina is a small residential community with approximately three thousand citizens. The City is nearly fully developed for residential use. The only non-residential uses existing within the City are an automobile service station, a church, a grocery, a nursery, a post office, schools, utility substations and Overlake Golf & Country Club. All non-residential uses are surrounded by residential properties or parks.

2. The City has a very limited number of potential sites which would be acceptable for the installation of wireless communication facilities.

3. The Federal Telecommunications Act was signed into law in February of 1995 [sic]. The affects [sic] of this act upon the City's ability to regulate wireless communication facilities require study by the City.

4. Changes in wireless telecommunications technology, additional licenses granted by the Federal Communications Commission and the increased demand for wireless communication services have lead [sic] to a significant increase in the demand for wireless communication facilities within the City. Five wireless communications providers have expressed desire to locate one or more facilities within the City. Additional requests are expected.

5. The citizens of Medina have expressed significant concern relating to the location of wireless communication facilities within the City. The primary concerns relate to potential health hazards and the aesthetic affects of such facilities on neighboring properties and the community as a whole.

6. The citizens of Medina have also expressed a desire that the City receive adequate wireless telecommunication services provided that the facilities are designed and located to minimize health and aesthetic concerns.

7. Information received from the industry and from other governmental agencies that have studied current technology establishes that wireless communication facilities can be designed and installed in ways that will minimize health and aesthetics concerns.

8. The City requires time to study the feasibility of requiring co-location of wireless communications facilities within the limited number of acceptable sites within the City. All efforts of the City to date to encourage co-location have been rejected by wireless providers.

9. Processing applications for wireless communications facilities at the present time without the information to determine the need for or the ability to design such facilities to allow for co-location or nearby siting of additional facilities may result in the inability to allow adequate sites for competing providers. Beneficial services may not be able to be provided without careful allocation of existing sites.

10. The Federal Communications Commission is currently developing rules regarding the environmental effects of radio frequency emissions which may impact the placement or configuration of wireless communications facilities.

11. With the assistance of current and future wireless communication providers, the City has made significant progress in the first two months of the moratorium in learning about necessary technical issues relating to facility siting.

THE CITY COUNCIL OF THE CITY OF MEDINA, WASHINGTON, does de-

clare that an emergency exists in that the issuance of special use permits for communication facilities without adequate study of the requirements of the entire spectrum of wireless providers and without study of the ability of wireless providers to eliminate or minimize health and esthetics [*sic*] concerns is likely to result in adverse effects on the health and safety of the citizens of Medina, now, therefore,

THE CITY COUNCIL OF THE CITY OF MEDINA, WASHINGTON, does resolve as follows:

RESOLVED that the moratorium upon the issuance of special use permits contained in Resolution No. 236 shall continue for the period of time set forth in Resolution No. 236.

On the same day it filed its amended complaint—April 11—Sprint applied to Medina for a permit to install a 100–foot antenna tower which would require a zoning variance. This was Sprint's first application to the City.

Also on April 11, Sprint filed a motion for a preliminary injunction declaring the moratorium invalid under the TCA and the 1993 Act. No other ground for preliminary relief has been asserted. The motion was briefed by both sides, and by *amici curiae* Nextel Communications, Inc., and Western Wireless Corporation. Oral argument was heard in open court on April 29, 1996.

█ To obtain a preliminary injunction, the moving party must show "(1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor." *Apple Computer, Inc. v. Formula Int'l, Inc.,* 725 F.2d 521, 523 (9th Cir.1984); *Miller v. California Pacific Medical Center,* 19 F.3d 449, 456 (9th Cir.1995) (en banc). *See also Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1362 (9th Cir.1988) (en banc), *cert. denied,* 490 U.S. 1035, 109 S.Ct. 1933, 104 L.Ed.2d 404 (1989).

█ In the present motion, the outcome turns on a single question: If Medina's moratorium violates the TCA or the 1993 Act, Sprint should have a preliminary injunction; if not, its motion should be denied.

The TCA, quoted above, preserves the authority of state and local governments "over decisions regarding the placement, construction, and modification of personal wireless service facilities," with certain specified exceptions.

█ Under Washington law, moratoria and interim regulations are valid zoning tools. *See* RCW 35A.63.220; *Matson v. Clark Board of Commissioners,* 79 Wash. App. 641, 644, 904 P.2d 317 (1995); *Jablinske v. Snohomish County,* 28 Wash.App. 848, 850–51, 626 P.2d 543 (1981). Medina's moratorium was adopted pursuant to a State of Washington zoning statute, RCW 35A.63.220, which provides:

A legislative body that adopts a moratorium or interim zoning ordinance, without holding a public hearing on the proposed moratorium or interim zoning ordinance, shall hold a public hearing on the adopted moratorium or interim zoning ordinance within at least sixty days of its adoption, whether or not the legislative body received a recommendation on the matter from the planning agency. If the legislative body does not adopt findings of fact justifying its action before this hearing, then the legislative body shall do so immediately after this public hearing. A moratorium or interim zoning ordinance adopted under this section may be effective for not longer than six months, but may be effective for up to one year if a work plan is developed for related studies providing for such a longer period. A moratorium or interim zoning ordinance may be renewed for one or more six-month periods if a subsequent public hearing is held and findings of fact are made prior to each renewal.

Medina states that its moratorium will not be renewed to extend beyond August 12; that Sprint's April 11 application would not be heard until the May 28 Planning Commission meeting in any event; and thus that the Planning Commission's issuance of a permit (if granted) is deferred by only three months, to the August 27 meeting.

Sprint contends that the moratorium nevertheless violates Section 704(a)(7)(B)(i)(II)

of the TCA, which provides that a local government regulation "shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

The City's moratorium, however, is not a prohibition on wireless facilities, nor does it have a prohibitory effect. It is, rather, a short-term suspension of permit-issuing while the City gathers information and processes applications. Nothing in the record suggests that this is other than a necessary and *bona fide* effort to act carefully in a field with rapidly evolving technology. Nothing in the moratorium would prevent Sprint's application, or anyone else's, from being granted.

Sprint also contends that the moratorium violates Section 704(a)(7)(B)(ii) of the TCA, which requires the City to "act on" its application "within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request." In regard to that Section, the Joint Explanatory Statement of the Committee of Conference, in the Congress, said:

> If a request for placement of a personal wireless service facility involves a zoning variance or a public hearing or comment process, the time period for rendering a decision will be the usual period under such circumstances. It is not the intent of this provision to give preferential treatment to the personal wireless service industry in the processing of requests, or to subject their requests to any but the generally applicable time frames for zoning decision.

*Id.* at 208.

There is nothing to suggest that Congress, by requiring action "within a reasonable period of time," intended to force local government procedures onto a rigid timetable where the circumstances call for study, deliberation, and decision-making among competing applicants. The City is seeking to determine, among other things, whether tall antenna towers are still necessary for the purpose at hand. It is entitled to find that out. The "generally applicable time frames" for zoning decisions, in Washington, may include reasonable moratoria adopted in compliance with state law. To hold otherwise would afford telecommunications applicants the "preferential treatment" that Congress sought to avoid. Medina's moratorium, coupled with its ongoing investigation and its processing of applications, is consistent with this part of the TCA.

Sprint further argues that the moratorium violates TCA Section 704(a)(7)(B)(i)(I), which provides that a local government regulation "shall not unreasonably discriminate among providers of functionally equivalent services." But no discrimination has been shown. Sprint and others seek to enter the Washington market more than ten years after other wireless communications companies began business there. Medina would consider any new applications by the earlier arrivals under the same rules governing newcomers' applications. Whatever Medina does, it could not now place Sprint in the same position as that of the earlier entrants. All it can do is treat the would-be service providers without discrimination; given the recent dramatic changes in the law and the market, its generally-applicable moratorium is consistent with that requirement.

■ Finally, Sprint contends that the moratorium violates the 1993 Act, which provides in part that "no state or local government shall have any authority to regulate the entry of ... any commercial mobile service or any private mobile service." 47 U.S.C. § 332(c)(3)(A). This argument, however, would imply that federal law bars *any* rejection by local government of a wireless communications provider's application for a zoning variance. That is contrary to the TCA, which expressly preserves city and state zoning authority. The City's zoning resolution does not "regulate the entry" of any applicant within the meaning of the 1993 Act.

For the reasons stated, Medina's six-month moratorium on issuing new permits for wireless communications facilities, while the City gathers information and processes applications, does not, in and of itself, violate the TCA or the 1993 Act. No other ground for preliminary relief has been argued. Accordingly, plaintiff's motion for a preliminary injunction is denied.