**NATIONAL TELECOMMUNICATION ADVISORS, LLC, Plaintiff,**

v.

**BOARD OF SELECTMEN OF THE TOWN OF WEST STOCKBRIDGE, et al., Defendants.**

**Civil Action No. 98–30119–MAP.**

United States District Court, D. Massachusetts.

Nov. 19, 1998.

Nancy Frankel Pelletier, Robinson, Donovan, Madden & Barry, Springfield, MA, for Plaintiff.

Ilana M. Quirk, Kopelman & Paige, P.C., Boston, MA, Barbara J. Saint Andre, Kopelman and Paige, P.C., Town Counsel, Boston, MA, for Defendants.

## MEMORANDUM REGARDING PLAINTIFF'S MOTION FOR ISSUANCE OF INJUNCTIVE RELIEF AND ORDER OF MANDAMUS

(Docket No. 2)

PONSOR, District Judge.

## I. INTRODUCTION

On February 11, 1998, plaintiff National Telecommunication Advisors, LLC ("NTA") filed an application with the Board of Selectmen of the Town of West Stockbridge ("the Board") for a special permit to construct a 190–foot telecommunication monopole on a site in West Stockbridge Mountain as part of its wireless communication services network. NTA charges that, after the application was submitted, the Board unlawfully continued a public hearing on the matter and then enacted a six-month moratorium on granting such permits, with the result that when the public hearing was finally held the Board voted to deny the permit in light of the moratorium.

NTA alleges that the defendants' actions violated the federal Telecommunications Act of 1996 ("TCA"), as well as Mass.Gen.Laws ch. 40A, 42 U.S.C. § 1983 and local zoning ordinances. NTA seeks declaratory relief annulling the moratorium, injunctive relief and an order of mandamus compelling the Board to grant NTA the necessary permits. After argument this summer, the court gave counsel until August 17, 1998 to submit additional papers. As result of an unusually heavy trial schedule, the court's decision has been delayed until now.

For the reasons set forth below, the plaintiff's motion will be denied.

## II. FACTUAL BACKGROUND

In January of 1998, after determining that a site in West Stockbridge was appropriate for the telecommunication tower it wished to construct, NTA entered into a lease for the site with a private landowner. On February 11, 1998, NTA filed a request with the defendant Board for a special permit to build the tower.

On March 2, 1998, the Town Administrator advised NTA by letter that a public hearing regarding the request was scheduled for March 25, 1998 as required by Mass.Gen. Laws ch. 40A. In the letter, however, the Town Administrator informed NTA that there was a vacancy on the Board and that it was likely that the hearing scheduled for March 25 would be postponed until May, after the vacancy had been filled.

On March 11, 1998, unbeknownst to NTA, the Town of West Stockbridge gave notice pursuant to a warrant of a special Town Meeting to be held on March 30, 1998 to address the issue of telecommunication towers. Plaintiff alleges that there was no proper publication of this notice as required by Mass.Gen.Laws ch. 40A, § 5.

On March 17, 1998, NTA responded to the Town Administrator's letter, stating that NTA did not agree to any postponement of the March 25 hearing and that it wished to proceed before the existing members of the Board.

On March 30, 1998, the special Town Meeting was held and a six-month moratorium was enacted on the granting of "any special permit relative to commercial communication activities, including receiving facilities and antennas." The public hearing regarding

NTA's application, previously scheduled for March 25, was subsequently postponed to May 20, 1998.

The minutes of the March 30 West Stockbridge Town Meeting, at which the moratorium was adopted, indicate careful consideration of the purposes of the moratorium. The "Introduction and Statement of Purpose" of the amendment to the zoning bylaw containing the moratorium states:

> a. The increasing use of business and personal devices relying on personal wireless service facilities, often referred to as wireless telecommunications facilities, has generated a significant number of applications for the placement, construction, and modification of such facilities throughout the Commonwealth. *Given the rapidly evolving nature of the underlying technology, the Town has not had an opportunity to review and analyze the range of land use and regulatory issues raised by such facilities.*
>
> b. By enacting this moratorium, the Town believes it will have sufficient time to develop reasonable regulations regarding the placement, construction, and modification of personal wireless service facilities. The Town does not intend the moratorium to prohibit or have the effect of prohibiting the provision of personal wireless services; rather, it is a short-term suspension on new facilities until appropriate regulations can be developed. The Town fully recognizes its responsibilities under the Telecommunications Act of 1996. The Town believes, however, that full and impartial compliance with the Act is best accomplished through thoughtful analysis and subsequent regulatory guidance and that this approach is in the best interest of the Town and its inhabitants as well as the telecommunication industry.

Cooper Affidavit (Docket No. 10 at Ex. D) (emphasis supplied).

The moratorium bylaw goes on to note that it has been adopted "pursuant to the Town's responsibilities to protect public health, public welfare and public safety."

At the May 20, 1998 public hearing regarding NTA's application, the Board noted the moratorium and suggested continuing the hearing until after the expiration of the moratorium on September 30, 1998. When NTA pressed for an immediate vote, the Board denied the application because of the existence of the moratorium.

On June 16, 1998, plaintiff filed this lawsuit, and on July 7, 1998 the plaintiff's Motion for Preliminary Injunction and Order of Mandamus followed.

## III. DISCUSSION

The Telecommunications Act of 1996 ("TCA"), 47 U.S.C. §§ 151 *et seq.*, was enacted to "encourage the rapid deployment of new telecommunications technologies." *Reno v. American Civil Liberties Union*, 521 U.S. 844, 117 S.Ct. 2329, 2337, 138 L.Ed.2d 874 (1997). Included within the TCA are provisions concerning the development of competitive markets, Bell operating companies, broadcast services, cable services, regulatory reform and the control of obscenity and violence. *See* 47 U.S.C. §§ 151, *et seq.*

The statute imposes obligations on local zoning authorities to foster the rapid development of the fast-growing field of communications technology. Specifically, in making decisions about the placement, construction and modification of personal wireless service facilities, local governments (1) shall act on any request for authorization "within a reasonable period of time after the request is duly filed," 47 U.S.C. § 332(c)(7)(B)(ii); (2) "shall not unreasonably discriminate among providers of functionally equivalent services," 47 U.S.C. § 332(c)(7)(B)(i)(I); and (3) "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). The TCA further establishes (4) that denials of applications "shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

NTA alleges that the Town has violated these four provisions. The evidence does not support plaintiff's claim.

### A. *Unreasonable Delay*

NTA argues that the defendants' passage of the moratorium was merely a delaying

tactic. The Town's intransigence, plaintiff says, was especially glaring, since a workshop had been sponsored by the Berkshire Regional Planning Commission on "Preparing Towns for the Telecommunications Act of 1996" more than a year prior to the adoption of the moratorium.

■ Although the TCA requires local governments to act on applications for wireless service facilities within a reasonable time, the statute was not intended "to give preferential treatment to the personal wireless service industry in the processing of requests, or to subject their requests to any but the generally applicable timeframes for zoning decision." *Sprint Spectrum, L.P. v. City of Medina,* 924 F.Supp. 1036, 1040 (W.D.Wash.1996) (quotation omitted).

■ In *Medina,* the District Court upheld a six-month moratorium on the issuance of new special use permits for wireless communications facilities, explaining that Congress did not intend "to force local government procedures onto a rigid timetable where the circumstances call for study, deliberation, and decision-making." *Id.* As in *Medina,* nothing in the record of this case "suggests that [the moratorium] is other than a necessary and *bona fide* effort to act carefully in a field with rapidly evolving technology." *Id.* Although West Stockbridge has concededly had more time than the City of Medina since the passage of the TCA, it is not unreasonable for the Town to seek a relatively short period of time to develop reasonable regulations regarding the placement of these facilities.

*Sprint Spectrum, L.P. v. Jefferson County,* 968 F.Supp. 1457 (N.D.Ala.1997), is not to the contrary. In that case, the District Court held that a moratorium was void under state law, where it was not adopted in accordance with state procedural requirements and where the county had already imposed *two* previous moratoria. *See id.* at 1465–67. Notably, the court there did not suggest that either of the first two moratoria were improper.

This court is aware that other district courts have issued orders pursuant to the TCA forestalling the effect even of first-time moratoria. *See, e.g., Sprint Spectrum, L.P. v. Town of Farmington,* No. 3:97 CV 863(GLG), 1997 WL 631104 (D.Conn. Oct.6 1997). In the end, however, "each situation must be independently examined" and this court finds that the moratorium in this case simply was not unreasonable. *Virginia Metronet, Inc. v. Board of Supervisors,* 984 F.Supp. 966, 976–77 (E.D.Va.1998) (finding fourteen-month delay not *per se* unreasonable under TCA); *Illinois RSA No. 3, Inc. v. County of Peoria,* 963 F.Supp. 732, 746 (C.D.Ill.1997) (holding six-month delay in rendering final decision not *per se* unreasonable).

B. *Discrimination*

■ The TCA prohibits unreasonable discrimination among service providers. NTA contends that the moratorium was imposed in direct response to its application, and that the Town therefore discriminated. Affidavits provided by the Town, however, support its claim that the moratorium was not aimed specifically at NTA. Moreover, the record contains no evidence that the Town has treated other applicants more favorably. As noted above, a valid basis existed for the moratorium. Additionally, the record reflects no "ill will" either towards NTA or towards the telecommunications industry, in general. *See AT & T Wireless PCS, Inc. v. City Council of the City of Virginia Beach,* 155 F.3d 423, 427–28 (4th Cir.1998) (holding that city did not discriminate in the absence of a showing of "ill will"); *Cellco Partnership v. Town Plan and Zoning Com'n of Town of Farmington,* 3 F.Supp.2d 178, 185 (D.Conn.1998) (finding no discrimination where no evidence existed that Commission treated providers differently). In sum, no discrimination has been shown under the TCA as a matter of law.

C. *Prohibition*

It is very difficult for an applicant to argue that denial of a single application effectively establishes an intent to prohibit, or effectively prohibit, the provision of personal wireless services. *See Cellco,* 3 F.Supp.2d at 185. A contrary conclusion "would effectively nullify local authority by mandating approval of all

**288**

(or nearly all) applicants, a result contrary to the explicit language of Section (B)(iii), which manifestly contemplates the ability of local authorities to 'deny a request.'" *AT & T Wireless PCS,* 155 F.3d at 428.

Indeed, as the court will reiterate below, plaintiff in this case is fully entitled to reapply for an appropriate permit under the terms of applicable regulations. Unwarranted delay, and groundless or arbitrary denial of the application would entitle the plaintiff once more to seek relief from this court. There has been no showing of any "prohibition" in these circumstances.

### D. *Substantial Basis in the Record*

■ Contrary to NTA's claim, the Town complied with the requirement that denials "shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). It is true that the written record in this case is brief, since the basis for denial is straightforward. This brevity, however, does not amount to any absence of adequate support for the Town's decision.

### IV. *CONCLUSION*

For the foregoing reasons, the plaintiff's Motion for Injunctive Relief and Order of Mandamus is hereby DENIED. This ruling is, as noted, without prejudice. Obviously, the moratorium in question has now expired by its own terms. Plaintiff is free to resubmit its application in accordance with whatever procedures have now been adopted by the Town and consistent with any standards set forth in applicable regulations. Unreasonable delay, discrimination, arbitrariness or other violations of the TCA may warrant a renewal of plaintiff's motion.

The clerk will be ordered to set this matter down for a status conference to determine future proceedings.