(No. 25530.—

Guy Harmon *et al.* Appellants, *vs.* The City of Peoria, Appellee.

*Opinion filed April 17, 1940—Rehearing denied June 12, 1940.*

Jones, J., dissenting.

John Radley, for appellants.

William L. Eagleton, and Michael A. Shore, (Alfred Bettman, of counsel,) for appellee.

Mr. Chief Justice Wilson delivered the opinion of the court:

The plaintiffs, Guy Harmon and his wife, Lena C. Harmon, filed their complaint in the circuit court of Peoria county against the defendant, the city of Peoria, seeking to restrain the enforcement of section 3 of its permanent zoning ordinance. By their complaint, plaintiffs charged that the ordinance as applied to their property, offends the Federal and State constitutional guaranties of due process. The chancellor entered a decree finding, as did the master in chancery to whom the cause was referred, that the ordinance was valid, and dismissed the complaint. Plaintiffs prosecute a direct appeal, the chancellor having certified that the validity of a municipal ordinance is involved and that, in his opinion, the public interest requires an appeal to this court.

The plaintiffs own and they reside in a two-story house located at 107 North Glenwood avenue, Peoria, purchased by them for approximately $6500 in 1937. A garage is also located on the premises. The property is in a resi-

dential subdivision known as "The Uplands." The subdivision contains 400 lots, is about thirty-five or forty years old, and the houses, including those in the block where plaintiffs live, average around twenty years of age. The lot on which the house and garage stand has a frontage of 40 feet upon North Glenwood avenue, and extends 132 feet to an alley. A short distance directly south of plaintiffs' property North Glenwood avenue intersects at right angles with Main street, a heavily traveled thoroughfare, having a double street-car track upon it. In August, 1937, plaintiffs enlarged a sun room or alcove at the rear of the house on the first floor to make the room more suitable as a bedroom for themselves. A permit from the building commissioner was obtained prior to making this improvement. In addition, plaintiffs furnished two rooms' on the second floor as sleeping quarters and a third room as a sitting room to be used with one of the bedrooms. Plaintiffs also prepared two rooms to be utilized for cooking purposes by installing sinks, running water, gas stoves and electric refrigerators, having first obtained a permit from the plumbing inspector. The two kitchens on the second floor are so arranged that one kitchen adjoins a sleeping room and the other is connected with the sitting room and the second bedroom. The appearance of the house from North Glenwood avenue remains unchanged. As remodeled, plaintiffs' house is adapted for use as a three-family dwelling. Plaintiffs intended to rent the two suites of rooms on the second floor to two couples who would use the single front entrance. A bathroom and hall on the second floor of the house, according to plaintiffs, were to be used in common by the four prospective tenants. The testimony discloses that plaintiffs had an offer to rent the two front rooms for $50 per month and an offer to rent the three rear rooms at a monthly rental of $55. If rented without kitchen facilities these same rooms would rent for not more than $4 each. The building commissioner advised plaintiffs that the pro-

posed use of their premises would constitute a violation ·of the zoning ordinance and confirmed his decision in writing. The board of appeals affirmed the commissioner's decision and, thereafter, certain city officials threatened to arrest plaintiffs if they rented the rooms on the second floor ·of their house. This action followed.

The permanent zoning ordinance was adopted on April 21, 1931. The Uplands is zoned as an "A" one-family district. The record discloses that The Uplands is one of the two well-settled older residential sections of the city in which there are no stores or other business establishments. A "one-family dwelling," the ordinance provides, is a detached building designed for or occupied exclusively by one family. "Family" is defined as "one or more persons occupying a premises and living as a single housekeeping unit as distinguished from a group occupying a boarding house, lodging house, or hotel." A lodging house, the ordinance adds, is a building other than a hotel where lodging for five or more persons is provided for compensation. A boarding house, according to the ordinance, is a building other than a hotel, where lodging and meals for five or more persons are served for compensation. A two-family dwelling is declared to be a detached or semi-detached building designed for or occupied exclusively by two families, and a multiple dwelling, the ordinance says, is a building used or designed as a residence for three or more families or households living independently of each other. Section 3 captioned "A One-Family District" ordains in such district no building or land shall be used and no building shall be hereafter erected or structurally altered, unless otherwise provided in the ordinance except for the following uses: (1) One-family dwellings; (2) churches; (3) elementary and high schools; (4) museums, libraries, parks, playgrounds or community centers owned and operated by the city of Peoria; (5) golf courses; (6) farming and truck gardening; (7) nurseries and greenhouses for the propagation and cultivating of plants only;

(8) accessory buildings including one private garage or private stable when located not less than sixty feet from the front line nor less than five feet from any other street line, or a private garage constructed as a part of the main building. The term "accessory buildings," is further defined to include servant quarters if occupied by servants employed on the premises and provided that such quarters shall be located not less than sixty feet from the front lot line nor less than five feet from either side lot line. To the regulations described it is provided that the property in the district may be devoted to uses customarily incident to any of the named uses when situated in the same dwelling, including home occupations such as the offices of physicians, surgeons, dentists, musicians, or artists. Section 9 provides that the lawful use of the building existing at the time of the enactment of the ordinance may be continued, although such use does not conform to the ordinance. A maximum penalty of $50 is fixed for each violation of the ordinance and each day a violation continues is declared to be a separate offense. From the foregoing it appears that a family occupying a one-family dwelling may consist of the owner's immediate family and four additional persons as boarders or roomers. On the other hand, duplexes and apartments such as those prepared by plaintiffs are forbidden except when so used at the time the zoning ordinance became effective.

Some additional facts and circumstances disclosed by the pleadings and the evidence require recounting. Of the eighteen houses in the block in which plaintiffs' property is located at least five houses were actually used or adapted to use as two and three-family dwellings. According to defendant, only three houses have been remodeled by converting the second floor into one or two apartments, and in at least two cases this change was made before the zoning ordinance was adopted. In addition to the five houses equipped with two or more separate cooking units there are

at least six rooming houses in the same block. Of these, the persons occupying the house next door to the plaintiffs usually rented to three individual roomers and sometimes served breakfast to their lodgers. The house directly across the street at 108 North Glenwood avenue regularly contained three roomers. The occupants of four other houses were accustomed to renting rooms. It thus affirmatively appears that more than one-half of the houses in the block have been used as two or multiple-family dwellings and rooming houses. Indeed, defendant's testimony discloses that three other houses have at one time had roomers.

Two qualified witnesses expressed the opinion that the value of the property in the vicinity of plaintiffs' house would not be affected adversely if they rented the rooms on the second floor together with the separate cooking units. One of these witnesses testified that the manner in which the remodeling of plaintiffs' premises had been done would have more effect on surrounding property than the use to which the property would be put after the remodeling, and, specifically, that the fact three separate family units might occupy the Harmon residence would have no more effect on the adjoining property than if the same number of people lived as one family upon the same premises. The testimony of the real estate experts tends to show that the market value of plaintiffs' property would be increased an appreciable amount by conversion of their one-family residence into three housekeeping units. A witness for defendant testified that if one out of every four houses in the block were used as duplexes or apartments, the remaining houses would be less desirable for single-family residential purposes.

The decisive issue presented for decision is the reasonableness of the restriction of section 3 of the defendant's permanent zoning ordinance, as applied to plaintiffs' property, and, in particular, whether the restriction preventing plaintiffs from using their property for three housekeeping

units, and from renting such units, bears any substantial relation to the public morals, health, safety, comfort or general welfare. The power of the defendant to adopt a comprehensive zoning ordinance imposing reasonable restraints upon the use of private property must be conceded. (*Village of Euclid* v. *Ambler Realty Co.* 272 U. S. 365; *City of Aurora* v. *Burns,* 319 Ill. 84.) This court is committed to the doctrine that it is not a zoning commission and that all questions relative to the wisdom or desirability of particular restrictions in a zoning ordinance rest with the legislative bodies creating them, and that a finding will not be disturbed where there is ground for a legitimate difference of opinion concerning the reasonableness of a particular ordinance. (*Evanston Best & Co. Inc.* v. *Goodman,* 369 Ill. 207.) It is equally well settled that the governmental power to enact zoning regulations is not unfettered, and where the ordinance assailed bears no substantial relation to the public health, morals, comfort, safety or general welfare the ordinance cannot be sustained as a valid exercise of the police power. (*Johnson* v. *Village of Villa Park,* 370 Ill. 272; *People* v. *City of Rockford,* 363 id. 531; *Ehrlich* v. *Village of Wilmette,* 361 id. 213; *Merrill* v. *City of Wheaton,* 356 id. 457.) Whether the means employed have any real substantial relation to the public health, comfort, safety or welfare, or are essentially arbitrary and unreasonable, is a question which is subject to review by the courts. (*Merrill* v. *City of Wheaton, supra.*) In determining whether a particular ordinance is, in fact, in the interest of the public welfare, each case must be determined upon its peculiar facts. (*Johnson* v. *Village of Villa Park, supra; Reschke* v. *Village of Winnetka,* 363 Ill. 478.) Moreover, a zoning ordinance may be valid in its general aspects, and yet, as to a particular state of facts involving a particular parcel of real estate affected thereby, be so clearly arbitrary and unreasonable as to result in confiscation, thereby justifying the interposition of a court of equity

to restrain the enforcement of the ordinance. (*Johnson* v. *Village of Villa Park, supra; People* v. *City of Rockford, supra; Ehrlich* v. *Village of Wilmette, supra.*) "If the gain to the public is small," we have said, "when compared with the hardship imposed upon individual property owners, no valid basis for an exercise of the police power exists." *Evanston Best & Co. Inc.* v. *Goodman, supra.*

In ascertaining whether the application of the zoning ordinance to plaintiffs' property transcends constitutional guaranties the character of the property in the immediate neighborhood, in contradistinction to the character of The Uplands as a whole, requires consideration. Here, the validity of the ordinance as applied to the entire subdivision is not challenged. In short, it is only to the extent that the ordinance applies to plaintiffs' property that an unreasonable exercise of the police power is claimed. Prior to the institution of this litigation it appears that a majorty of the houses located in the same block as plaintiffs' premises were used in part, at least, for income purposes. Five or six houses were adapted to the use of two or three housekeeping units and were devoted, when possible, to such uses. Six, or more, of the remaining houses in the block accommodated roomers at various times. For all practical purposes, the dwellings accommodating roomers adversely affected the minority of the houses used solely for single-family residence purposes as much as if occupied by two or three families. The ordinance, it has been observed, defines a "family" as one or more persons occupying premises and living together as a single housekeeping unit as opposed to a group occupying a boarding house, lodging house or hotel. Admittedly, a person may legally lodge and board four persons for remuneration upon premises located in an "A" one-family district and, specifically, in the block where plaintiffs reside. Plaintiffs, it is conceded, enjoy the right under the ordinance to rent rooms to a maximum of four individual roomers and, if they so desire, may serve

meals to such persons. Indeed, any number of persons may occupy a house as a "family," within the contemplation of the ordinance, and divide the housekeeping expenses, provided only they live as a solitary housekeeping unit, using a single kitchen. Manifestly, the term "one-family dwelling," bears no relation in fact to the number of persons or families living in a building. On the other hand, the ordinance prohibits plaintiffs from renting their suites of rooms equipped with adequate kitchen facilities to two couples. The harsh reality of the distinction made by the ordinance is evidenced by the refusal of the zoning officials to permit the use last described. Tested in the light of the applicable principles set forth the distinction is unreasonable in the extreme, particularly since less than one-half of the residences in the block are actually used as single-family dwellings. The use of plaintiff's one-family residence by six persons maintaining three separate housekeeping units appears no more inimical to the public welfare than the devotion of their property to the accommodation of four roomers and boarders.

The classification made by section 3 of the ordinance, to the extent it denies plaintiffs the privilege of using their property as a multiple-family dwelling under the circumstances narrated, is arbitrary, and the prohibition bears no rational relation to the protection of the public health, morals, safety and general welfare. As applied to plaintiffs' property, the ordinance is void.

Our attention is directed to the fact that plaintiffs purchased the property in controversy subsequent to the passage of the zoning ordinance. This fact, alone, does not preclude plaintiffs, as purchasers, from contesting the validity of the ordinance. They stand in the place of their grantor, and where a grantor had the right to test the validity of an ordinance the same right exists in his grantees. Furthermore, this court appears to be committed to the doctrine that

mere acquiescence, irrespective of the period of time, cannot legalize the clear usurpation of power which offends against the basic law. *Forbes* v. *Hubbard,* 348 Ill. 166.

The decree of the circuit court is reversed and the cause is remanded to that court, with directions to enter a decree conformably to the prayer of plaintiffs' complaint.

*Reversed and remanded, with directions.*

Mr. Justice Jones, dissenting.