Louis D. BURRELL and E. Jean Burrell, Plaintiffs-Appellants,

v.

CITY OF KANKAKEE, a municipal corporation, and Kankakee County Housing Authority, an Illinois municipal corporation, Defendants-Appellees.

No. 85–3075.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1986.

Decided April 6, 1987.

Thomas E. McClure, Elliott & McClure, Bourbonnais, Ill., for plaintiffs-appellants.

D. Kendall Griffith, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Vincent P. Paulauski, Bourbonnais, Ill., for defendants-appellees.

Before BAUER, Chief Judge, WOOD, Circuit Judge, and LEIGHTON, Senior District Judge.*

* The Honorable George N. Leighton, Senior District Judge for the Northern District of Illinois, is sitting by designation.

BAUER, Chief Judge.

Plaintiffs, Louis Burrell and Jean Burrell, appeal from the district court's dismissal of their complaint alleging that defendants, the City of Kankakee ("City"), and the Kankakee County Housing Authority ("KCHA"), violated their federally-protected rights under the Fair Housing Act, 42 U.S.C. §§ 3604 and 3617, and their substantive due process rights under 42 U.S.C. § 1983. At the close of the plaintiffs' evidence, the district court granted defendants' motion to dismiss on the ground that neither the defendant City nor the defendant KCHA violated any of plaintiffs' constitutional or other federally-protected rights. We affirm.

## I.

### The "Allison" Case

On May 7, 1980, the plaintiffs filed a petition with the Plan Commission of the City of Kankakee to rezone certain properties in the city from single-family residence to multi-family residence. The Plan Commission held public hearings and voted unanimously to deny the plaintiffs' petitions because of (1) uncertainty of participation by title owners; (2) density of population; and (3) the need of variances. Later, the Kankakee City Council voted to concur in the Plan Commission's recommendation to deny plaintiffs' petitions.

On September 16, 1980, the City adopted a Planned Unit Residential Development Ordinance ("PURD Ordinance") to authorize the construction of planned unit residential developments. The PURD Ordinance required that: (1) a developer first apply with the City for tentative approval of his plan; (2) that a public hearing be held at which time the Plan Commission would recommend tentative approval or denial of the proposal; and (3) that upon approval by the City Council, the developer apply for final approval. The Plan Commission designated four areas in the city available for such development.

On February 24, 1981, pursuant to the PURD Ordinance, the plaintiffs submitted two site plans to the Kankakee City Council for tentative approval. The City Council referred them to the City Plan Commission. The plaintiffs' PURD proposals are called the Allison Housing Complex. The first proposal, "Plan C", provides for the development of 72 two-bedroom units accompanied by 208 parking spaces. Plaintiffs' other proposal, the "Alternate" site plan, provides for 68 two-bedroom units accompanied by 108 parking spaces to be built on the same parcels of land.

After receiving the two proposed site plans, the City Planner, Thomas Palzer, asked for and received input from various city department officials. The Plan Commission held a hearing and subsequently recommended to deny tentative approval for plaintiffs' housing project because plaintiffs' proposals were inconsistent with the City's Comprehensive Plan and the City's Housing Assistance Plan. Additionally, the Plan Commission rejected plaintiffs' proposals because each called for a high density project which would result in overcrowding. Finally, the Plan Commission rejected plaintiffs' proposals because they did not meet the parking requirements. On April 20, 1981, the Kankakee City Council denied tentative approval of both site plans. Plaintiffs subsequently brought suit against the City and KCHA. The KCHA, however, is not a party to the Allison case. The district court consolidated the Allison case with the "Section 8" case.

### The "Section 8" Case

On June 15, 1980, the County Housing Authority initiated a Section 8 Mandate Rehabilitation Housing Program. It advertised that it would accept proposals for appropriately—located housing units to be rehabilitated and then rented under the Section 8 program. The Section 8 program is a funding program whereby the Department of Housing and Urban Development ("HUD") enters into a written agreement with a Public Housing Authority ("PHA") to provide annual contributions for housing

assistance payments and certain other expenses. The County Housing Authority was the PHA administering the Section 8 program in Kankakee county. Plaintiffs submitted their applications in June, 1980 and entered into a final Housing Assistance Payment ("HAP") contract in April 1984.

## II.

Plaintiffs first argue that the City denied them substantive due process of law when it rejected their proposals. They argue that the Plan Commission unreasonably relied on four findings of fact that are erroneous or constitute improper considerations under the PURD Ordinance. In addition, plaintiffs assert that the City failed to satisfy the Section 8 requirement that it set forth in writing the reasons for the denial of tentative approval of their proposals. Plaintiffs' claim under Section 1983 for an alleged substantive due process violation fails because plaintiffs have not been deprived of a constitutional right. *Creative Environments, Inc., v. Estabrook,* 680 F.2d 822 (1st Cir.1982). Moreover, a review of the evidence reveals that the decisions of the Plan Commission and the City were reasoned applications of the PURD Ordinance and that the City's reliance on the negative findings prepared by Palzer satisfied the writing requirement under Section 8.

■ Assuming, *arguendo,* that plaintiffs' allegations are true, their claim does not state a constitutional deprivation under Section 1983 because plaintiffs have not been deprived of a constitutional right. In *Estabrook,* the First Circuit Court of Appeals held that "property is not denied without due process simply because a local planning board rejects a proposed development for erroneous reasons or makes demands which arguably exceed the authority under the relevant state's statute." 680 F.2d at 832. Thus, in order to prevail on a substantive due process claim, plaintiffs must allege and prove that the denial of their proposal is arbitrary and unreasonable bearing no substantial relationship to the public health, safety or welfare. *Village of Belle Terre v. Boraas,* 416 U.S. 1,

94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). There is no evidence to suggest that the Plan Commission or the City rejected plaintiffs' proposal on the basis of race or color. On the contrary, the evidence suggests that the City acted pursuant to good faith concerns for the public interest. We agree with the district court that the plaintiffs have not been denied due process of law based on the allegations before us.

■ Next plaintiffs argue that the Plan Commission unreasonably relied on four findings of fact that are erroneous or improper considerations under the PURD Ordinance. Plaintiffs challenge the Plan Commission's first finding, that the proposals were inconsistent with the City's Comprehensive Plan. They argue that the City had designated plaintiffs' site for multifamily development by designating it as a PURD site. However, Thomas Palzer, testified that the "Goals and Objectives" found in the City's Comprehensive Plan were that the height, density and type of a proposed residential development be consistent with the existing building patterns in the area. (TR. II, 65–66). He testified that the building pattern in the area was one of single homes, whereas the plaintiffs' proposed development called for 68 to 72 units constructed in 8–10 multi-story buildings located on a three acre site.

Plaintiffs disagree with the second finding of fact, that their proposals are inconsistent with the City's Housing Assistance Plan ("HAP"). They argue that their proposals had nothing to do with the housing assistance certificates and that their proposals were financially sound without subsidies. They argue, therefore, that it is not relevant whether or not their proposals are consistent with the City's HAP plan. Because HAP is part of the Comprehensive Plan, it was appropriate for the City to consider it when evaluating plaintiffs' proposals.

Plaintiffs challenged the Plan Commission's third finding of fact, that the proposed plan exceeds the mandatory density provisions stated in the zoning ordinance.

Palzer testified that the Comprehensive Plan recommended low to moderate development densities as the prevailing characteristic for most of the City's residential sections. According to the Plan, low to moderate density would be approximately eight to thirteen dwelling units per acre. Plaintiffs' proposals called for densities of over twenty units per acre. Furthermore, the Comprehensive Plan discouraged the development of high density apartment complexes. Paragraph 4 of the "Goals and Objectives" section provides:

"There will be a substantial increase and request for high density apartment development within the city in response to the mounting demand for central accommodations for small families. This demand will accompany continued metropolitan growth. However, low and moderate density housing, suitable for medium and large families, such as single family homes, row houses and garden apartments, should continue as a prevailing condition throughout most of the city. This overall objective is intended, above all, to be consistent with the aim of continuing to provide a wide range of housing types and family types."

Finally, Palzer testified that an influx of 200 to 300 people living immediately adjacent to a quiet single family residential area would materially change the character of the neighborhood and that this change would be detrimental. (Tr. II, 49–50). Plaintiffs argue that this third finding is irrelevant since multiple family housing under the Comprehensive Plan allows up to 22 units per acre. However, we find this argument unpersuasive in light of the objectives of the Plan to keep the development consistent with the building patterns in the area and to discourage the development of high density apartment complexes.

The Plan Commission's fourth finding of fact regarding parking accommodations lends additional credence to the City's argument. Plaintiffs proposal, if constructed, would significantly increase the traffic and pedestrian population. The evidence shows that various City department heads expressed concern over lack of off street parking and the lack of access for emergency vehicles. In short, there is substantial evidence to show that the rejection of the Allison project was not an arbitrary decision, but related to the public's health, safety and welfare.

### III.

■ Plaintiffs argue that they are entitled to lost rent and delayed rent subsidies because defendants KCHA and the City violated their rights under the Fair Housing Act, 42 U.S.C. §§ 3604 and 3617. The Act prohibits the denial of housing to persons because of race, color, religion, sex or national origin. *Southend Neighborhood Improvement v. County of St. Clair*, 743 F.2d 1207 (7th Cir.1984). Plaintiffs contend that delays in processing their HAP contracts resulted in a discriminatory impact on prospective tenants, giving rise to relief under the Fair Housing Act. The district court dismissed plaintiffs' Section 8 claim on the ground that the evidence was insufficient to support this claim.

In *Southend*, we held that Section 3604(a) prohibits conduct by individuals or governmental units which directly affect the availability of housing to minorities. Here plaintiffs failed to introduce any evidence which indicates that the availability of housing to minorities was at all affected. They failed to introduce any evidence concerning the race, sex, or religion of any prospective tenant or any evidence to show that minorities would have lived in the units once they were rehabilitated. Plaintiffs' claim that the City's conduct delayed their entry into HAP contracts with the KCHA is different from the practices that we have deemed illegal under the Fair Housing Act. Assuming, *arguendo*, that Section 8 rehabilitation applications of black property owners were processed more slowly than other applications, or that non-black applicants were allowed to enter into HAP contracts more quickly than black applicants, the evidence shows that it was due to other factors such as the use of an unqualified inspector on 15 black projects and a staff not experienced in processing Section 8 applications. In any event, plaintiffs claims are not cognizable

under the Fair Housing Act since defendants' conduct did not directly affect the availability of housing to minorities.

Finally, plaintiffs argue that *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 558 F.2d 1283 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978) ("Arlington Heights II") stands for the proposition that proof of discriminatory effect alone constitutes a "per se" violation of the Fair Housing Act. In *Arlington Heights II,* we declined to extend the reach of the Fair Housing Act this far. To reiterate, "although a showing of discriminatory intent is not required under Section 3604(a), we refuse to conclude that every action which produces discriminatory effects is illegal. Such a per se rule would go beyond the intent of Congress and would lead courts into untenable results in specific cases." In *Arlington Heights II,* we identified four critical factors to determine under what circumstances conduct that has a discriminatory impact but which was taken without discriminatory intent will violate Section 3604(a). The facts we considered are: (1) the degree of discriminatory effect proved by plaintiffs; (2) whether there was some evidence of discriminatory intent; (3) the defendant's interest and justification in taking the action complained of; and (4) whether the plaintiff sought to compel the defendant to affirmatively provide housing for members of minority groups or merely to restrain the defendant from interfering with individual property owners who wished to provide housing. 558 F.2d at 1290.

With regard to the first factor, plaintiffs failed to produce any evidence which indicates that the availability of housing to minorities was affected by the conduct of the City and the KCHA. Similarly, in analyzing the second and third factors, there is no evidence that the plaintiffs' race had any bearing on any decision or action taken by the City or the KCHA. The decisions to deny plaintiffs' proposals stems from the concern that an undue concentration of assisted housing existed in the City's first ward. Both first ward aldermen, as well as the director of Community Development

for the City believed that having additional assisted housing in the first ward would have a deleterious effect on the neighborhood and that it was more desirable to spread such housing throughout the City's seven wards.

Lastly, plaintiffs are seeking lost rents and delayed rent subsidies and are not seeking to restrain the defendants from interferring with the rights of individual property owners to provide housing to minorities or seeking to compel the defendants to provide housing for members of minority groups. All of plaintiffs' properties were rehabilitated and accepted into the program. The evidence suggests that the delays in completing the HAP contracts were a function of location of the property within the first ward, rather than the race of the developer. Plaintiffs received retroactive housing assistance payments for their properties that had been subjected to delays, with the retroactivity being calculated to the point of final inspection, regardless of the date that the HAP contracts were ultimately signed (Tr. 1, 117–124). In addition to retroactive payments, the plaintiffs are receiving a 20% exception rent on top of the fair market rent. (Tr. 1, 125). Both the retroactivity of payments and the 20% exception rent for the plaintiffs' properties adequately compensate plaintiffs for delay in getting their units under contract. Under this four part analysis the evidence does not support a violation of Section 3604(a).

## IV.

In conclusion, the plaintiffs failed to prove that the defendants violated their substantive due process rights under 42 U.S.C. § 1983 or their rights as citizens under the Fair Housing Act. For the foregoing reasons, the judgment of the district court is

AFFIRMED.