ILLINOIS RSA NO. 3, INC., Plaintiff,

v.

COUNTY OF PEORIA, Defendant.

No. 96–3248.

United States District Court,
C.D. Illinois,
Springfield Division.

April 28, 1997.

Richard J. O'Brien, Theodore T. Chung, Chicago, IL, for plaintiff.

Mary W. McDade, Charles D. Knell, Laurie M. Judd, Peoria, IL, for defendant.

## OPINION

RICHARD MILLS, District Judge:

The Telecommunications Act of 1996 requires local governments to rule on requests to build cellular telecommunications facilities within a reasonable time and to issue written decisions that are based on substantial evidence in a written record.

In 1996, the County of Peoria denied Plaintiff's request to build a cellular communications tower.

Although the County acted within a reasonable time, it did not issue a written decision and substantial evidence did not support its decision.

Accordingly, the County's decision cannot stand.

## I. BACKGROUND

### A. *Parties*

Plaintiff is an Illinois corporation that provides cellular telecommunications service in central Illinois. Plaintiff holds licenses from the Federal Communications Commission to provide cellular telecommunications service in the Peoria Metropolitan Statistical Area (Peoria, Tazewell, and Woodford Counties) and the Illinois Rural Service Area (RSA) No. 3 (Fulton, Schuyler, Hancock, McDonough, Henderson, Mercer, Knox, and Warren Counties). Defendant is a non-home rule county within the State of Illinois.

### B. *Plaintiff's Proposed Cell Site*

Plaintiff wishes to place a cellular transmission tower (a cell site) in the Village of Bartonville in Peoria County to improve the cellular telephone service it provides. Plaintiff expects that a cell site in Bartonville will fill gaps in coverage and would improve cellular telephone service at the Peoria Airport and on a nearby interstate highway Based on its own studies, Plaintiff concluded that the ideal location for the additional cell site is 4324 W South Street in Bartonville. To select a site, Plaintiff used various engineering criteria to determine the best location, negotiated with the property owner for a lease, filed required notices and certificates with the Federal Aviation Administration, studied the potential environmental impact of such a site, and consulted with adjoining land owners to obtain their consent to build the cell site.

### C. *The County's Zoning Regulations*

The property where Plaintiff wants to build its tower is zoned "R1." The County employs fifteen different classifications in its zoning code:

1. "A" Agricultural District
2. "R1" County Home District
3. "R2" Medium Density Residential District
4. "R3" Multiple Family Residential District
5. "R4" Planned Residential District
6. "B1" Commercial District
7. "B2" Commercial District
8. "B3" Commercial District
9. "C1" Neighborhood Commercial District
10. "C2" General Commercial District
11. "C3" Community Commercial District
12. "C4" Regional Commercial District
13. "11" Industrial District
14. "12" Industrial District
15. "13" Industrial District

The zoning ordinance describes the R1 district this way:

> The "R1" County Home District is designed to protect and preserve quiet low density residential areas that are presently developed and those areas that will be developed with single-family dwellings and which areas are characterized by a high ratio of home ownership.

> The regulations for this district are designed to stabilize and protect the residential character of the district and to promote and encourage suitable environment for activities associated with family life. Development is limited to relatively low concentration and the uses permitted are limited to principally single-family dwellings in areas not generally served with public facilities. Certain additional uses related to residential uses such as govern-

mental buildings, neighborhood centers, religious institutions, etc., may be permitted in this district provided they meet conditions specified and obtain approval of the county board.

County of Peoria, Illinois Zoning Ordinance § 24–122 (1994) (hereafter Zoning Ordinance). Although the Zoning Ordinance specifically lists numerous uses other than single family dwellings as suitable for the "R1" district, it does not specifically list commercial communications towers[1] as a suitable special use.[2] Commercial communications towers are specifically permitted, however, as special uses in the "A" Agricultural district, Zoning Ordinance § 24–109(20), in the B3 district, *id.* § 24–198(62), in the C2, C3, and C4 districts, *id.* § 24–217, and in the I1, I2, and I3 districts, *id.* § 24–232(a)(9).

Since February 1989, the County has granted special use permits for nine cellular phone towers. One of the nine petitions was for a special use within the R2 district. The "R2" Medium Density Residential District consists primarily of medium density single and two-family homes. It was designed "to encourage and preserve medium density neighborhoods ... and to provide a suitable environment for activities associated with family life." Zoning Ordinance § 24–136. The Zoning Code does not expressly permit commercial communications towers as a special use in the R2 District.

#### D. *Proceedings Related to Plaintiff's Special Use Petition for the Bartonville Site*

Plaintiff believes that Illinois law does not allow the County to subject Plaintiff to zoning restrictions. Based on a 1994 Illinois Attorney General Opinion, Plaintiff has insisted since it first sought approval of the Bartonville cell site that the County does not have zoning authority over Plaintiff. Accordingly, Plaintiff wrote the County before December 1995 and asked to be excused from the regular zoning process. Plaintiff never received a response to its request and, to foster good will and speed the construction of the cell site, petitioned for a special use to allow it to construct the proposed cell site.

Plaintiff filed its Petition for a special use permit (the Petition) on December 6, 1995. Plaintiff requested a special use permit to construct a monopole cellular telephone transmission tower 140 feet tall; specified the address and zoning classification of the property; described the present use of that property and the surrounding area; and explained the purpose of the request. The proposed site is "vacant, agricultural waste" in a "vacant field surrounded by trees which provide[ ] a buffer from adjacent properties."

The first step in the County's zoning process was review of the Petition by the County's Planning and Zoning Department (the Department). The Department has a staff of about ten and is headed by Elizabeth Haderlein. In a written report dated January 2, 1996, the Department recommended allowing the Petition with certain restrictions. The Department found that the Petition was consistent with applicable land use plans and maps, would have little or no impact on local traffic volume, would have minimal impact on the environment, and would comply with zoning ordinance requirements. The Department also concluded that "the adjacent land uses and zoning of the site lends itself to be used as a commercial communications tower."

Under the County's zoning scheme, the next step toward receiving a special use permit is a hearing before the Zoning Board of Appeals (ZBA). When considering petitions for special use permits, the Zoning Ordinance directs the ZBA to "give consideration to the health, safety, morals and general welfare of

---

1. The Zoning Ordinance defines a "commercial communications tower" as "[a] structure situated on a nonresidential site that is intended for transmitting or receiving radio, television, or telephone communications (excluding those towers used exclusively for dispatch communications as an accessory to an established principal use)." Zoning Ordinance § 24–1.

2. The Zoning Ordinance defines "special uses" as "those uses in the various zoning districts which, because of their unique characteristics, cannot be properly classified in any particular district without special hearings before the zoning board for additional consideration of each case to determine the impact of that use upon neighboring land and to determine the desirability for the public welfare of that use in the particular location." Zoning Ordinance § 24–1.

persons in the area of the property any adverse impact on other land uses, the possibility of traffic congestion, harm to public roads, erosion of adjacent property and threat to any source of water supply" Zoning Ordinance § 24–326(e). The ZBA held meetings on the Petition on January 12 and January 26, 1996. At the meetings, the ZBA heard testimony from county residents who objected to the Petition (objectors) on the grounds that. the proposed tower would pose risks to their health and would diminish property values. Plaintiff's representatives at the meetings responded to the concerns the objectors raised.

At the January 26 meeting, an opponent of the Petition presented a petition signed by 200 people who opposed the placement of any tower in the R1 district. The petition did not indicate the basis for this objection. One objector, a realtor with 24 years experience, expressed concern about property values, but did not offer any specific analysis of Plaintiff's proposal or cite any similar situations in which property values had fallen as a result of a cell site being constructed.

At the January 26 meeting, Plaintiff's representative, Donald Monarch, provided the ZBA with materials that showed that the tower's radio frequency emissions would be at a level lower than the maximum permitted by federal law and that the emissions would not interfere with other communications services. Monarch also presented a statement showing that the community would receive additional tax revenue from the tower, and that the tower would be 600 feet from the nearest residence or structure. Most importantly Monarch presented information from three certified real estate appraisers who had concluded that cellular transmission towers do not have a negative impact on property values.

On February 9, 1996, the ZBA deliberated on the Petition. Ms. Haderlein opined that the objections to the Petition were based on unfounded fears and that Plaintiff had supported its Petition with professional facts. Haderlein also told the ZBA that the tower would have no adverse health impact and that there was no evidence that property values would decrease as a result of the tower's construction. The ZBA, however, denied the Petition by a vote of 4–3. The ZBA based its decision on uncertainty about whether Plaintiff had explored alternative sites.

For the next step in the zoning process, the Petition passed to the Land Use Committee of the County Board (the LUC) for consideration. The LUC consists of five County Board members and makes recommendations to the entire County Board on zoning issues. The LUC considered the Petition on February 28, 1996. Before the meeting, the LUC received copies of the Department's report and the ZBA's minutes (which contained the ZBA's findings and recommendation). The LUC did not receive copies of the Petition, submissions to the ZBA, or transcripts of the ZBA meetings.

At the LUC's February 28 meeting, Monarch addressed the issue of alternate sites for the tower. He stated that Plaintiff had investigated two other sites, but that neither was acceptable because they would not provide adequate coverage and because one would have conflicted with airspace restrictions for the Bausch Industrial Airport. Monarch also stressed that Plaintiff would screen and landscape the Bartonville site to reduce the tower's visual impact. The LUC asked Monarch to investigate a third possible site, and continued the hearing until April 3, 1996. At that meeting, Monarch told the LUC that the site they had proposed contained a restrictive covenant in its deed that prohibited the tower. At the April 3 meeting, the LUC voted to recommend approval of the Petition with the restrictions contained in the Department's report.

The entire County Board took up the Petition on April 9, 1996. Before the meeting, the Board members received the Department's written report, the minutes of the ZBA meeting, and the ZBA's findings. The Board does not normally receive additional evidence during meetings on zoning matters, but it deviated from that practice on April 9. The Board allowed two individuals to display seven or eight photographs to the Board. These photographs do not appear anywhere in the record prior to the April 9, 1996 meeting and are no longer part of the perma-

nent record. According to Haderlein, the photographs depicted "houses in the neighborhood with a cellular tower imposed in their backyard" and "a little house with a big tower coming out of it." The photographs misrepresented the way the proposed tower would appear if constructed according to plan. The County Board did not vote on the Petition during the April 9 meeting. Instead, the County Board remanded the matter to the ZBA to consider the new demonstrative evidence.

On April 16, 1996, the Department issued an updated report regarding the Petition. Again, the Department recommended allowing the Petition. Haderlein testified in her deposition that the Department has not identified any negative aspect of the Petition and has not found any reason to conclude that its findings in the April 16, 1996 report are inaccurate.

The ZBA conducted its first meeting after the Petition was remanded by the County Board on April 26, 1996. At that meeting, Andrew Canopy testified for Plaintiff. Canopy is an engineer and surveyor. He presented line-of-sight drawings of the proposed cell site. The drawings demonstrate that the tower would not be visible from many of the neighboring properties. No witness criticized or refuted Canopy's testimony. James Klopfenstein, a certified real estate appraiser, also testified regarding the impact of cellular transmission towers on property values. Klopfenstein testified that he had conducted an analysis of areas with similar situations to the proposed tower and concluded that the towers did not affect property values.

Objectors also spoke at the April 26 ZBA meeting. They stated that they were concerned about the proposed tower's possible effect on property values. None of the objectors, however, claimed to have any expertise in the subject of real estate appraisal, nor did any of them present credible evidence to support their claims.

The most controversial evidence presented to the ZBA was a survey conducted by the Scotti Bureau of Marketing Research, Inc. Bobbie Grafton, an objector, presented the results of the survey Ms. Grafton did not offer the survey as scientific proof of the objectors' position. The survey asked respondents to consider whether they would buy a house depicted in a photograph. If the respondent said he would consider buying the house, the survey asked whether the presence of a tower within "475 feet of the rear lot line of the property would affect" his decision. If the answer to that question was yes, the respondent was asked to assume that he had decided not to buy the house and then asked further questions about his reasons for that hypothetical conclusion. Most of the people surveyed indicated that they would not have purchased a home within 475 feet of the tower based on "health concerns" or aesthetic reasons.

On May 10, 1996, the ZBA again deliberated on the Petition. This time, it recommended approval by a vote of 5–2. The ZBA found that:

1. Zoning staff report of 4–16–96 documents, details and supports petition.

2. The petition is logical, needed expansion of an existing business to better serve expanding customer needs.

3. Petitioner has credibility and reputation to materialize the petition as stated.

4. The surrounding area residents and environment will not be adversely impacted or impaired.

5. Traffic volume or movement is not affected by petition.

6. The petition is consistent with the County Land Use Plan.

7. The petition does not set a precedent in the area.

8. The petition is not excessive in scope.

9. The public's general welfare and safety are not adversely affected by the petition.

10. Objectors' concerns are being addressed by petitioners.

11. Other locations were researched.

The ZBAs findings and the minutes of the April 26 meeting were passed along to the LUC. On May 29, 1996, the LUC voted 2–2

on the Petition. Consequently, the LUC issued no recommendation.

The County Board again took up the Petition on June 11, 1996. By a vote of 13 to 2, the County Board denied the Petition. The Board did not issue any findings or conclusions to support its decision. The only document evidencing the Board's final decision is a June 11, 1996 letter to Plaintiff stating that the Board denied the Petition.

From start to finish, the zoning process concerning the Petition took six months. The parties dispute how that amount of time compares with the "average" amount of time similar zoning requests consume. The parties agree, however, that the County has rendered final decisions on nine similar requests within three months. Other types of zoning matters can take up to nine months to resolve. Ms. Haderlein testified in an affidavit that the usual duration of zoning procedures is two to three months.

### E. *Procedural History*

Plaintiff filed this lawsuit to obtain review of the County's decision. Plaintiff's Complaint is in three counts. Count I alleges that the County violated the provisions of the Telecommunications Act of 1996 (Telecom Act) Pub.L. No. 104–104, 110 Stat. 56.[3] Count II alleges that the County violated an Illinois state law that denies non-home rule counties the right to apply their zoning laws to public utilities. 55 ILCS § 5/5–12001 (West Supp.1996). Finally, Count III asserts that the County deprived Plaintiff of its right to substantive due process under the Illinois Constitution.

Plaintiff seeks three types of relief. First, Plaintiff asks the Court to declare that it is a public utility within the meaning of Illinois law and to enjoin the County from attempting to exercise zoning authority over Plaintiff. Second, Plaintiff asks the Court to declare that the County violated section 704 of the Telecom Act by denying the special use permit to Plaintiff and to order the County to issue a special use permit for the Bartonville cell site. Finally, Plaintiff seeks compensatory damages.

The parties have filed cross motions for summary judgment. Plaintiff's motion seeks summary judgment only as to Counts I and II of the Complaint (the Telecom Act claim and the claim under 55 ILCS § 5/5–12001). The County seeks summary judgment as to the entire Complaint.[4]

### II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "should be granted if the pleadings and supporting documents show that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Ruiz–Rivera v. Moyer*, 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202

---

3. Count I is brought under Section 704 of the Telecom Act. Section 704 amends 47 U.S.C. § 332 by adding a new paragraph to § 332(c). Telecommunications Act of 1996, § 704, Pub L. 104–104, 110 Stat. 56, 151–52 (codified at 47 U.S.C. § 332(c)(7)).

4. A remark about the statements of undisputed facts required by Local Rule 7.1(D)(1) is in order. Both parties filed extensive statements of undisputed facts in support of their motions. Both parties, however, have failed to comply with the letter and purpose of Rule 7.1(D). Initially, both parties use their statements of undisputed facts to cite various statutes and other legal authorities. That is not a proper subject for a statement

of undisputed fact—statutes and legal authorities are not "fact;" citations to such authorities belong in the memorandum of law. Next, both parties lumped multiple facts into single numbered paragraphs. This unnecessarily complicates the process of responding to the statement of undisputed facts. Under Local Rule 7.1(D), the ideal response is one that simply states "admit" if a particular statement of fact is admitted. When the parties lump several facts together in one numbered paragraph, however, the opposing party cannot simply say "admit" but must often admit one sentence or portion of a statement and contest other parts.

(1986). Courts must consider evidence in the light most favorable to the nonmoving party *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## III. ANALYSIS

### A. *The County's Zoning Authority Over Plaintiff*

Count II of the Complaint alleges that as a matter of Illinois law, the County lacked zoning authority over Plaintiff. Accordingly, Plaintiff argues in its motion that it is entitled to summary judgment because the County had no authority to deny the Petition. Plaintiff relies on an Illinois Attorney General's Opinion construing a provision of the Illinois Counties Code to conclude that non-home rule counties lack zoning authority over cellular telephone companies.

The Illinois Counties Code denies non-home rule counties zoning authority over "the type or location of any poles, towers, wires, cables, conduits, vaults, laterals or any other similar distributing equipment of a public utility as defined in The Public Utilities Act, if the public utility is subject to The Messages Tax Act, The Gas Revenue Tax Act or the Public Utilities Revenue Act. ...." 55 ILCS § 5/5–12001 (West Supp. 1996) (footnotes omitted). The Public Utilities Act defines "public utility" as an organization engaged in:

 a. the production, storage, transmission, sale, delivery, or furnishing of heat, cold, power, electricity, water, or light, except when used solely for communications purposes;

 b. the disposal of sewerage; or

 c. the conveyance of oil or gas by pipe line.

220 ILCS § 5/3–102 (West Supp.1996). The Messages Tax Act, 35 ILCS § 610/1–610/15 (West 1996), however, relates solely to industries engaged in the business of telecommunications. Although the Counties Code refers to the Messages Tax Act, the Public Utilities Act seems to exclude telecommunications businesses. Plaintiff argues that this omission makes the Counties Code ambiguous.

This issue is the subject of an Illinois Attorney General's opinion that opines that non-home rule counties do not have authority to subject cellular telephone companies to zoning regulation. 1994 Ill. Atty Gen. Op. 94–02. Based on that authority, Plaintiff claims that the County could not use its zoning process to prohibit Plaintiff from building its tower.

Since it first conceived the Bartonville project, Plaintiff has consistently claimed that the County had no zoning authority over such a project. The County has acknowledged that claim and has pursued legislative efforts to determine whether it has such authority But neither party sought appropriate relief, at the appropriate time, to resolve that dispute. Instead, Plaintiff voluntarily submitted to the County's zoning procedures to speed approval of its project and to foster local good will.

Either party could easily have sought a declaratory judgment regarding the County's authority from an Illinois court. Nevertheless, both parties elected not to go that route. Generally, a waiver requires a knowing, voluntary, and intentional relinquishment of a right:

> Waiver is the voluntary intentional relinquishment of a known right. *United States v. Ross*, 77 F.3d 1525, 1541–42 (7th Cir.1996) (quoting *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993)). "[W]aiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1140–41, 89 L.Ed.2d 410 (1986).

*Burris v. Parke*, 95 F.3d 465, 471 (7th Cir. 1996) (en banc) (Manion, J., concurring). Under Illinois law, "waiver is defined as 'either an express or implied voluntary and intentional relinquishment of a known and existing right.' *National Tea Co. v. Commerce & Indus. Ins.*, 119 Ill.App.3d 195, 74 Ill.Dec. 704, 711, 456 N.E.2d 206, 213 (1983) (citing *Ames v. Crown Life Ins. Co. of Toronto, Canada*, 85 Ill.App.3d 203, 40 Ill.Dec. 521, 523, 406 N.E.2d 222, 224 (1980))." *Universal*

*Fire & Casualty Insurance Co. v. Jabin,* 16 F.3d 1465, 1470 (7th Cir.1994).

■ Nothing could be more clear than that Plaintiff waived its right to challenge the County's zoning authority. Plaintiff knew it had the right to challenge (or test by refusing to comply with) the County's zoning regulations. Plaintiff was not forced, coerced, or even cajoled into foregoing a judicial challenge to the County's zoning authority. Plaintiff gave up its right to challenge the County's authority intentionally—and it admits it did so to speed up the process and to foster local good will.[5]

In support of its position, Plaintiff cites *Trust Co. of Chicago v. City of Chicago,* 408 Ill. 91, 96 N.E.2d 499, 505 (1951). Specifically, Plaintiff cites the last sentence of the following paragraph:

A purchaser of property has the right to rely upon the classification which existed as to that property when the purchase was made and upon the rule of law that its classification will not be changed so long as the basis of public welfare remains the same. *Metropolitan Life Ins. Co. v. City of Chicago,* 402 Ill. 581, 84 N.E.2d 825; *Kennedy v. City of Evanston,* 348 Ill. 426, 181 N.E. 312. This does not mean, however, that a purchaser of property upon which a restriction had previously been imposed by a zoning ordinance may not attack the validity of such restriction. *Forbes v. Hubbard,* 348 Ill. 166, 180 N.E. 767. Neither such purchase nor the fact that the purchaser or his grantor may have acquiesced in such classification will estop the purchaser from testing the validity of the ordinance, since this court is committed to the doctrine that mere acquiescence, irrespective of the length thereof, cannot legalize the clear usurpation of power which offends against the basic law. *Harmon v. City of Peoria,* 373 Ill. 594, 27 N.E.2d 525; *Forbes v. Hubbard,* 348 Ill. 166, 180 N.E. 767. Zoning ordinances, whether they be original or amendatory legislation, and regardless of how long or by whom they have been recognized as legal, cannot be sustained if in violation of the constitution.

The preceding passage does not support Plaintiff's position. The Supreme Court of Illinois in *Trust Co. of Chicago* held simply that a property owner does not waive the right to challenge a zoning classification by buying property with knowledge of its existing zoning classification. The court said nothing, however, about a party's general ability to waive objection to the zoning authority of a local government.

■ Finally, Plaintiff argues that it could not challenge the County's zoning authority in state court before proceeding further with its proposed cell site because that option was "unacceptable insofar as [it] would have inevitably resulted in litigation and substantial delay and would have undermined plaintiff's interest in fostering local good will." That argument is without merit. One essential element of the concept of waiver is that by waiving rights, parties forego the benefits of one course of action in favor of the benefits of another. Only in cases where a party's choice of one course of action is not voluntary (because it is coerced, for example) do the circumstances of the choice matter. Here, Plaintiff was not coerced into following the County's zoning procedures; therefore, its choice to do so was not involuntary and it may operate as a waiver of Plaintiff's right to challenge the County's authority.

### B. The Telecom Act

The issues that arise under the Telecom Act are more numerous and a bit more complex. The central question is whether the County's decision is supported by substantial evidence on a written record. A secondary question is whether the County acted on the Petition for special use permit within a reasonable time. The Court takes these questions in turn.

---

5. Perhaps Plaintiff forfeited its right to challenge the County's zoning authority. *See United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (distinguishing waiver and forfeiture). But Plaintiff offers no reason why the distinction between waiver and forfeiture makes a difference in this case. The consequence of waiver and forfeiture is largely the same: that the party may no longer assert the waived or forfeited right. The difference between the two concepts matters, however, when it comes time for appellate review. *See id.*

### 1. Substantial Evidence and a Written Decision

██ The Telecom Act requires that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). The Telecom Act does not define the term "substantial evidence," but that term is derived from doctrines of administrative law and its meaning is well established. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Dilling Mechanical Contractors, Inc. v. National Labor Relations Board,* 107 F.3d 521, 524 (7th Cir.1997) (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938))). "Substantial evidence is more than a scintilla of evidence but less than a preponderance...." *Geske & Sons, Inc. v. NLRB,* 103 F.3d 1366, 1374 (7th Cir.1997) (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

██ The Telecom Act also does not define the terms "in writing" and "written record," but those terms plainly require the state or local governments to issue decisions regarding personal wireless service facilities in written form, stating the reasons for the decision, and providing written evidence or a written record of the proceedings that led to the government entity's decision. *See Western PCS II Corp. v. Extraterritorial Zoning Authority,* No. 957 F.Supp. 1230 (D.N.M. 1997) (finding that a local zoning authority violated the Telecom Act because it "made no written findings denying [the plaintiff's] request").

██ The County violated the Telecom Act in the most basic way. Nowhere in the record is there a written statement of the reasons why the County denied Plaintiff's special use permit. True, the record contains a written denial of the Petition, but that written denial states:

> On June 11, 1996, the Peoria County Board DENIED your request for a Special Use for a utility communication tower in the R1 Zoning District.
>
> You have the right to appeal this decision. You must file your appeal with the Peoria Circuit Clerk's Office. Please contact your attorney if you have questions about this letter.
>
> Thank You for your cooperation.

This letter says nothing about the reasons why the County Board denied the Petition and it does not refer to any record evidence. By denying the Petition without a final written statement of reasons, the County violated the Telecom Act. 47 U.S.C. § 332(c)(7)(B)(iii); see *Western PCS II Corp.,* 957 F.Supp. at 1235–36. The Court also agrees with the Court in *Western PCS II Corp.,* that a post-appeal transcript of proceedings before a local zoning authority is not sufficient to meet the requirements of § 332(c)(7)(B)(iii). *Western PCS II Corp.,* 957 F.Supp. at 1236.[6] Decisionmaking must make written findings and conclusions so that reviewing bodies may efficiently judge those findings and conclusions against the evidence and the record. The County authored no document stating its reasons for denying the Petition (and thus no written decision) as required by the Telecom Act.

The County violated the Telecom Act by failing to issue a written statement of its reasons for denying the Petition. That is enough, under 47 U.S.C. § 332(c)(7)(B)(v), to entitle Plaintiff to relief. A more substantial basis exists, however, for ruling in Plaintiff's favor: substantial evidence in a written record did not support the County's decision.

██ The County makes several arguments regarding substantial evidence. First,

---

**6.** A transcript of the County Board's final meeting on the Petition was prepared, but neither that transcript nor the facts it supports constitute a written decision by the County Board. Additionally, the discussion of the Petition at the final County Board meeting clearly shows that the County Board was not concerned with the evidence for or against the Petition. Instead, the County Board was almost exclusively concerned with whether it had authority under state law to regulate placement of cellular telephone towers.

the County suggests that substantial evidence supports its decision simply because the County's Zoning code does not expressly permit cell sites as special uses in the R1 district. Resting on this basis would be unwise.

■ The County admits that it has permitted a cellular tower in the R2 district, and the Zoning Code also does not expressly permit cellular towers as special uses in the R2 district just as it does not do so for the R1 district. If the County refuses to permit towers in the R1 district but allowed one in the R2 district, then it violated the Telecom Act's antidiscrimination provision. 47 U.S.C. § 332(c)(7)(B) prohibits local governments from unreasonably discriminating "among providers of functionally equivalent services." The County offers no reason why it would permit someone to construct a cellular tower in the R2 district and not the R1 district. And without any reason, discrimination is unreasonable and violates the Telecom Act.

Perhaps anticipating that result, the County does not rely on the fact that the Zoning Code does not expressly permit cellular towers as special uses in the R1 district. Instead, in its memorandum in support of its summary judgment motion, the County states that it did not deny the Petition simply because it proposed building a tower in the R1 district. The County stresses that it elected to be flexible with cellular service providers and considered the application despite the fact that it was for a cell site in the R1 district.[7] Of course, had the County decided to be inflexible and totally forbid cellular facilities in certain areas of the County, it might have tripped over another provision of the Telecom Act: 47 U.S.C. § 332(c)(7)(B)(i)(II) which directs that local regulation "shall not have the effect of prohibiting the provision of personal wireless services."

The County next argues that based on the sum of the material presented during the zoning proceedings, substantial evidence supported its decision. In proceedings before

the County, Plaintiff submitted a wealth of evidence in support of the Petition, including expert testimony on the issue of property values and the obtrusiveness of the proposed tower. The opposing evidence consisted of local property owners' objections based on health concerns, fears about diminished property values, and generalized concern that Plaintiff had not adequately investigated alternate sites. Under scrutiny, none of this evidence amounts to more than a scintilla of support for the County's final decision.

■ When deciding whether a decision rests on substantial evidence, the Court must consider all of the evidence in the record, the evidence in favor of the decision under review as well as the evidence opposed to the decision. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951). The decisions of intermediate administrative tribunals are considered part of the evidence. *Id.* at 496, 71 S.Ct. at 468–69.

The County mentions several specific facts in support of its position that its decision was supported by substantial evidence. First, the County argues that Plaintiff conducted only a cursory review of alternate sites for its proposed tower. The County fails, however, to explain why the ZBA concluded, at its May 10, 1996 meeting, that Plaintiff had adequately researched other possible sites. The County's present failure to address this issue mimics the County Board's failure to give any reason, in writing, for denying the Petition. If the County believed, and the evidence supported, the notion that Plaintiff failed to investigate alternate sites, the County was obliged, under the Telecom Act, to so state in writing, especially in the face of conclusions to the contrary by other zoning entities.

The County also places great weight on the evidence and statements offered by the numerous objectors to Plaintiff's proposal. Under scrutiny, these objections carry little weight. Numerous objectors raised concerns

---

7. This argument sounds remarkably like Plaintiff's argument regarding waiver of its objection to the County's zoning authority. Indeed, the County might be said to have waived or forfeited

its right to object to the proposed cell site in the R1 district on the ground that cell sites are not listed as permissible special uses.

about possible health effects of the proposed tower. Under the Telecom Act, however, the County could not consider potential health effects of Plaintiff's proposed cell site. 47 U.S.C. § 332(c)(7)(B)(iv)("No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the [Federal Communications] Commission's regulations concerning such emissions."). Thus, the Court will not consider evidence of supposed ill health effects of radio frequency emissions (unsupported by any scientific evidence, of course) when searching the record for substantial evidence.

Second, the objectors almost uniformly complained that the proposed tower might diminish property values. But they did not present any expert or authoritative evidence on this issue. Plaintiff, however, offered the testimony of a real estate appraiser who explained that cellular towers similar to the one Plaintiff proposes have no significant effect on property values. Plaintiff also presented testimony and demonstrative exhibits from an engineer who demonstrated that the proposed tower would not be visible from many of the surrounding properties. Objectors also offered the much-discussed survey of local residents for the proposition that the public believed the proposed tower would be an eyesore and would diminish property values. The only written evidence pertaining to the survey is a brief description of how it was carried out and copies of numerous responses. The survey is of no value and the Court will disregard it. The Court has no basis upon which to judge the survey The Court does not know how the respondents were selected or how they were questioned. Furthermore, nothing in the record suggests that the survey has any statistical or scientific merit. The Court cannot say that the survey amounts to anything more than evidence of generalized and unfounded opposition to the proposed cell site. *See BellSouth Mobility, Inc. v. Gwinnett County*, 944 F.Supp. 923, 928 (N.D.Ga.1996) (holding that an objector's "generalized concerns do not constitute substantial evidence").

■ Generalized, nonexpert objections to the proposed cell site certainly cannot constitute substantial evidence that the proposed tower would adversely affect property values. *Id.* The County suggests, alternatively, that the complaints about the proposal are evidence that the tower would adversely affect the quality of life in the area. Again, the County runs into problems because it did not issue a written decision. If the objections are valid evidence that Plaintiff's proposed cell site would diminish the quality of life in the area, then how can the County explain the seemingly contrary conclusions of the Department and the ZBA? If the County weighed all of this conflicting evidence and found the general complaints of citizens more compelling than the findings of the County's zoning experts, then the County should have said so in a written order.

■ A review of the record, such as it is, reveals that the County's sole basis for denying the Petition was little more than that numerous people opposed it. But under substantial evidence review, the mere existence of opposition is insufficient to support an agency decision against a request. Instead, the agency must rely upon more than a scintilla of evidence that a decision against the request is warranted under the agency's criteria. Under the County's Zoning Ordinance, the criteria for granting a special use permit are whether or not the proposal will adversely affect "health, safety, morals and general welfare of persons in the area of the property, any adverse impact on other land uses, the possibility of traffic congestion, harm to public roads, erosion of adjacent property and threat to any source of water supply." Plaintiff satisfied an these criteria and objectors offered no viable evidence on those points. Thus, the County's denial of the Petition was not supported by substantial evidence.

### 2. Acting Within a Reasonable Time

The Telecom Act requires: "[a] State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of

time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request." 47 U.S.C. § 332(c)(7)(B)(ii). The Act does not define "reasonable period of time."

■■■ Plaintiff claims that the County violated § 332(c)(7)(B)(ii) by taking six months to issue a final decision on the Petition. The County has rendered final decisions on nine similar requests within three months. Other types of zoning matters can take up to nine months to resolve. The "usual duration" of zoning procedures is two to three months.

The Court cannot say that taking six months, compared to three months, is per se unreasonable, and nothing in the record suggests that the County simply ignored or refused to process Plaintiff's request. Additionally, the Department issued its first report slightly more than one month after Plaintiff filed the Petition, suggesting that the Department began to work on (or acted upon) the Petition almost as soon as Plaintiff filed it. Furthermore, the record reveals that Plaintiff did not object to several continuances, and generally took a permissive approach to scheduling (no doubt to foster local good will). Based on these factors, the Court finds that the County complied with § 332(c)(7)(B)(ii).

## C. *Plaintiff's Constitutional Claim*

■■■ Plaintiff claims that the County violated its right to substantive due process under the Illinois Constitution action when it denied the Petition. On a constitutional challenge "a zoning ordinance will be upheld if it bears any substantial relationship to the public health, safety, comfort or welfare.... The challenging party must establish by clear and convincing evidence that the ordinance, as applied, is arbitrary and unreasonable and bears no substantial relation to the public health, safety or welfare." *Tomasek v. City of Des Plaines*, 64 Ill.2d 172, 179–80,

354 N.E.2d 899, 903 (Ill.1976); *see also Wright v. County of Winnebago*, 73 Ill. App.3d 337, 341, 391 N.E.2d 772, 775, 29 Ill.Dec. 347, 350 (2d Dist.1979).[8]

Plaintiff claims that a genuine issue of material fact exists barring the Court from granting summary judgment on Plaintiff's substantive due process claim. Plaintiff fails, however, to identify that issue of material fact. On the contrary, the material facts of this case are clearly undisputed. All that remains is for the Court to inspect the County's action under the standard stated above.

■■■ The Court finds no evidence that the County's action was arbitrary and unreasonable. Although the County did not base its decision on substantial evidence in a written record, the County did not simply toss a coin to decide the fate of the Petition. The arbitrary and unreasonable standard contemplates a finding of unconstitutionality only when the decision making authority completely abandoned any pretense of fairness and order. A decision may bear a substantial relationship to the public health, safety, and welfare without simultaneously being supported by substantial evidence. Accordingly, while the County's decision may not have been supported by the record, it was supported by the County's belief, which is not patently unreasonable, that the proposed cell site would be a bad thing for the local residents.

## IV. CONCLUSION

The Court has sifted the arguments and the evidence and finds that this case is ready to be concluded at this stage. The Court will not reach the complex question of statutory interpretation raised by Plaintiff's claim that the County has no authority under Illinois law to subject Plaintiff to the zoning process. Instead, the Court finds that such a claim is waived. The Court does find, however, that the County violated federal law when it failed to issue a written decision and when it acted

**8.** To show that a zoning decision violates the United States Constitution, the plaintiff must show that the decision was "arbitrary and unreasonable and bearing no substantial relationship to the public health, safety, or welfare." *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 467 (7th Cir.1988) (citing *Burrell v. City of Kankakee*, 815 F.2d 1127, 1129 (7th Cir.1987)). In other words, the plaintiff must show that the County's decision was invidious and irrational. *Id.*

upon the Petition for special use permit without substantial evidence in the written record to support its action. Finally, the Court finds that the County's action, although illegal under the Telecom Act, does not violate the Illinois constitution.

 In view of the facts of this case, the Court concludes that the appropriate relief under the Telecom Act is an injunction directing the County to issue the requested special use permit and to remove any further obstacles to Plaintiff's construction of the proposed cell site. *See Western PCS II Corp.*, 957 F.Supp. at 1239–40; *BellSouth Mobility, Inc.*, 944 F.Supp. at 929. Although the parties brushed the issue of monetary damages earlier in these proceedings, discussion of that topic is now notably absent from their memoranda. In the absence of any persuasive argument on the issue, the Court concludes that monetary damages are not appropriate under the Telecom Act.

An alternate course might be to remand this case to the County Board to allow further consideration and issuance of a written decision. That would be a waste of time and would frustrate the Telecom Act's direction to expedite these proceedings. The County had its chance to produce substantial evidence to support its position, and it did not do so. No reason exists to send this case back to that body.

*Ergo,* Plaintiff's Motion for Partial Summary Judgment is ALLOWED in part and DENIED in part. Defendant's Motion for Summary Judgment is ALLOWED in part and DENIED in part.

The County of Peoria, Illinois is ordered to grant Illinois RSA No. 3, Inc. a special use permit to construct the cellular communications tower proposed in its petition for special use permit filed with the County on December 6, 1995. The County is also directed to remove any further impediments to Illinois RSA No. 3, Inc.'s lawful construction of the proposed tower.

Each party shall bear its own costs.