**AT&T WIRELESS PCS, INC., and Primeco Personal Communications, L.P., and Lynnhaven United Methodist Church, Plaintiffs,**

v.

**CITY COUNCIL OF THE CITY OF VIRGINIA BEACH, Defendant.**

**No. CIV. A. 2:97CV391.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Sept. 24, 1997.

■

Robert Edward Bourdon, Sykes, Carnes, Bourdon & Ahern, P.C., Virginia Beach, VA, William G. Broaddus, McGuire, Woods, Battle & Boothe, Richmond, VA, Robert William McFarland, Douglas Edwin Miller, Fred Bradford Stillman, McGuire, Woods, Battle & Boothe, LLP, Norfolk, VA, for Plaintiffs.

Lawrence Steven Emmert, William M. Macali, Office of the City Attorney, Virginia Beach, VA, for Defendant.

## MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

This matter comes before the Court on Plaintiffs and Defendant's cross motions for summary judgment. On April 23, 1997. Plaintiffs AT&T Wireless PCS, Inc. ("AT & T"), PrimeCo Personal Communications, L.P. ("PrimeCo"), and Lynnhaven Methodist Church ("the Church") filed a complaint alleging substantive and procedural violations of Section 704 of the Telecommunications Act of 1996 ("the Act") by the Defendant, the

City Council of the City of Virginia Beach ("the City Council"). Plaintiffs contend that the City Council's March 25, 1997 denial of the Church's application for a conditional use permit to erect two 135–foot monopole antenna towers on property owned by the Church was in violation of the Telecommunications Act. Plaintiffs AT&T and PrimeCo intended to lease the property from the Church in order to erect the antenna towers. Plaintiffs request relief in the form of a writ of mandamus to the City Council, or in the alternate, declaratory judgment finding the City Council's denial of the permit void, and a mandatory injunction to the City to approve the conditional use permit. Plaintiffs filed a motion for summary judgment pursuant to Fed. R.Civ.P. 56 on August 22, 1997; and Defendant filed for summary judgment on August 28, 1997. On September 9, 1997, the Court held a hearing on the motions.

Upon consideration of the pleadings and briefs submitted by the parties, the arguments of counsel, and the joint appendix of exhibits submitted by the parties, the Court finds that the Plaintiffs' motion shall be granted in part, and the Defendant's motion shall be granted in part, and the Court shall issue an injunction directing the City Council of the City of Virginia Beach to approve the Church's application for a conditional use permit, and to remove any further obstacles to Plaintiffs' construction of the proposed towers.

## I. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which grants the district courts original jurisdiction over "all civil actions arising under the ... laws ... of the United States." 28 U.S.C. § 1331. Plaintiffs' claims arise under § 704 of the Telecommunications Act of 1996, codified at 47 U.S.C. § 332(c)(7), which expressly permits

"[a]ny person adversely affected by any final action or failure to act by a ... local government or any instrumentality thereof that is inconsistent with this subparagraph may ... commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v).

## II. Standard of Review

A court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court reviews the record as a whole and in the light most favorable to the nonmoving party; "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *see also Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 119 (4th Cir.1991). "As to materiality, the substantive law will identify which facts are material." *Matsushita Electric Ind. Co., Ltd. v. Zenith Radio Corp.* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

The material facts of this matter are not in dispute. In the instant case, the parties have submitted a joint appendix of exhibits in connection with their respective motions for summary judgment. The joint appendix comprises the entire record of the City Council's proceedings, as well as the information presented to Defendant before and during those proceedings. As there are no other facts material to this matter in dispute, a decision on summary judgment is appropriate.[1]

1. Defendant has challenged two factual assertions in Plaintiffs' brief. Neither of these assertions have any bearing upon the Court's analysis or decision, and therefore are not material. First, Defendant disputes that extending service to the Little Neck peninsula was required by the license issued by the Federal Communications Commission ("FCC") and held by AT & T and PrimeCo. Title 47 U.S.C. § 332(c)(7) draws no distinction between the placement or construction of wireless facilities that are *mandated* by

the requirements of the FCC licence, and those that are desired by service providers for competitive reasons but not actually mandated. The second assertion Defendants dispute is that digital PCS providers are unable to serve the entire Little Neck peninsula. Defendants assert that the record is unclear as to whether some residents of the Little Neck peninsula are able to receive digital PCS services from antenna located outside of the area. Defendants do not challenge evidence contained in the joint appendix that a

### III. Factual Background

Plaintiffs AT&T and Primeco each hold licences from the Federal Communications Commission to serve the Hampton Roads area, including the City of Virginia Beach, with-digital wireless PCS. Digital wireless PCS, a technological advance over more traditional analog cellular telephone service, requires a system of overlapping "cells" or transmission areas in order to provide uninterrupted data transmission and phone service.[2] In order to provide such digital wireless services to individuals on the Little Neck peninsula, an area within the City of Virginia Beach, in 1995 AT&T and PrimeCo began searching for antenna sites.

The Little Neck peninsula posed a number of difficulties; the lack of any existing tall structures and the heavy tree cover which necessitated the erection of a new tower in order to serve the area with digital wireless PCS.

City staff, AT&T, and PrimeCo investigated a number of alternative sites, which were rejected for aesthetic or technical reasons, before contacting the Church. The Church and its congregation agreed to the proposed leasing of part of the Church's property to AT&T and PrimeCo for the erection of two monopole communications towers.

Under the Virginia Beach Zoning code, erecting the towers required the Church to obtain a conditional use permit. Appendix A, Zoning Ordinance, of the Code of the City of Virginia Beach, § 501 (1988) (herein-

after "Zoning Ordinance"). On October 1, 1996, the Church submitted its application for the conditional use permit. The application called for the construction of two 135–foot monopole communications towers, such towers to contain the antennas of AT&T, PrimeCo, and the two analog wireless communications providers.[3] Applications for a conditional use permit in Virginia Beach go through a three step review process: first, the application is reviewed by the planning director, in conjunction with his staff and other city agencies; second, the recommendations of the planning director are reported to the Planning Commission, which holds a public hearing, and makes recommendations to the City Council. Finally, the City Council of the City of Virginia Beach receives the recommendations of the Planning Commission and the city agencies, and holds a public meeting, after which the City Council votes to either approve or deny the application. Zoning Ordinance § 221.

In connection with the application, and to satisfy the requirements of Zoning Ordinance § 232,[4] the Church prepared and submitted a site plan specifying the location of the towers and related buildings, a letter from the manufacturer of the tower certifying the tower's compliance with engineering specifications, and a certificate of compliance with federal guidelines for exposure to radio frequency radiation. Finally, a letter from a property appraisal firm was submitted, such report stating that the proposed towers would have

---

sizeable "gap" or break in digital PCS service does exist on the Little Neck peninsula, and as the Telecommunications Act contains no de minimis requirement, the exact size of the gap, and whether it covers the "entire" Little Neck peninsula, is not material in this dispute.

2. Analog wireless communications systems also require a system of "cells."

3. The two providers of analog service, GTE Mobile Net and 360 Communications, are not parties to this matter. The record establishes that although analog service was already available in the Little Neck peninsula, the analog providers desired to use the new antennas to improve their service in the region.

4. The relevant portion of the Zoning Ordinance, City of Virginia Beach § 232 states:

(c) *Locational criteria.* In considering approval of any proposed communication tower site, the city council shall give consideration to the following criteria:

(1) Whether the application represents a request for multiple use of a tower or site ...

(2) Whether the application contains a report that other potential users of the site and tower have been contacted ...

(3) Whether the application shows how the tower or site will be designed or laid out to accommodate future multiple users.

(4) Whether the proposed tower is to be located in an area where it would be unobtrusive and would not substantially detract from aesthetics or neighborhood character, due either to location, or to the nature of surrounding uses (such as industrial uses), or to lack of visibility caused by natural growth or other factors.

no adverse effect upon the residential property values of adjacent homes.

The submitted documents were reviewed by City staff, who made several modifications before recommending approval of the application by the City Planning Committee, subject to three conditions. The evaluation of the Planning Department, contained in the report sent to the Planning Committee stated:

> The requested conditional use permit to place two monopole towers on the subject site is acceptable as submitted. The application has been developed specifically in keeping with provisions outlined in Section 232 of the City Zoning Ordinance pertaining to locational criteria for the placement of towers in the City of Virginia Beach. The applicant provides for multiple use of the proposed towers, accommodating each of the four carriers licensed to provide service in the Hampton Roads region. The site was selected after reviewing a number of possible options in the area with Planning Department staff. The proposed location of each tower was selected to minimize view and potential compatibility concerns of adjacent property owners. In a further effort to minimize compatibility concerns, the applicant proposes to use uniquely designed monopoles and antennas which are limited in diameter, and strictly limit the vertical cross section of the requested communications towers. The architectural design of the support buildings for the proposed towers was also developed in an effort to ensure that compatibility concerns were addressed. Each building is planned as a brick structure with rooflines and other architectural components aimed at complementing the existing church and other structures in the area. The submitted application also includes letters from licenced radio frequency and structural engineers addressing potential

design and non-ionizing electromagnetic radiation concerns.

Joint Appendix (hereinafter "J.A.") at 4. This report, along with the application materials, were forwarded to the City Planning Commission. On January 8, 1997, the City Planning Commission held a public hearing to consider the application. Several members of the public attended, some voicing concern over the proposed project. City planning staff and members of the commission addressed certain of these objections, after which the Planning Commission voted 10–0, with one abstention, to approve the application, subject to four conditions.[5] The record of the proceedings before the Commission, along with the recommendation and unanimous vote of the Commission, the report of the City's planning staff, and the application and related documents were all transmitted to the City Council for consideration. Other documents supplied to the City Council for consideration included a description of the need for the project, an evaluation of each of the alternative sites considered, coverage maps indicating the gap in the digital wireless PCS coverage, architectural renderings of the equipment buildings depicting the change; adopted at the request of City staff, and computer generated photographs depicting the appearance of the towers from a variety of locations in the surrounding neighborhood.

On March 25, 1997, Defendant met to consider the application. The first question before the City Council was a requested deferral of consideration on the Church's application. The only council member on record expressing an opinion[6] on the matter was Councilman William W. Harrison, Jr., who stated:

> The reason why the 400 members of that church aren't down here tonight and the reason why you aren't going to get a deferral is because you didn't notify me you wanted a deferral and I found out about it

---

**5.** While Defendant has noted the City's ability to mandate compliance with any recommended conditions, Plaintiffs have indicated their willingness to comply with all of the conditions recommended by the Planning Commission and City staff. The recommended conditions are not at issue in this matter.

**6.** Council Ladies Strayhorn and Parker asked questions relating to the reason for the requested deferral, specifically asking if Plaintiffs were currently investigating an alternate site, but neither expressed an opinion on the record as to the merits of the deferral, or of the application.

inadvertently at a seminar from Eddie Bourdon on Friday afternoon. On Friday afternoon, I had already committed to the President of the Kings Grant Civic League that there was absolutely no reason for a deferral. I had already committed, after studying this issue at great length, that I was not going to support this application and I don't know what my colleagues are going to do, but I'm not going to support this application at this site, at this time . . . I would like to let you know this: Under no uncertain terms I have already committed to the civic league that a deferral means nothing, because a deferral if you go to another site you're going to have to go back through the process, back through the Planning Department, back through the Planning Commission and then back through this Body. A deferral does nothing, but cause these people more acrimony, more division in the Little Neck Peninsula and I think we ought to go ahead and put it behind us.

J.A. at 45–46. The City Council then went on to, consider the application.[7] Seven witnesses, including representatives of the Plaintiffs, spoke in support of the application, five witnesses spoke against it. The only Council member who appears on the record as expressing an opinion as to the application was, once again, Councilman William W. Harrison, Jr., who, in an exchange with counsel for PrimeCo, Mark Williamson, stated:

COUNCILMAN HARRISON: Mr. Williamson, I agree you all have done an incredible amount of homework and investigation and I know the staff has and I know the Planning Commission took this into consideration. One thing you did show us is that you do have a hole in your service area. There's no question. You have a major hole in your service area. You said all of the providers have that same hole and with that I would disagree, because I have a cellular phone and I drove the peninsula—

MARK WILLIAMSON: Okay. I will amend that statement. The cellular problem is not as big as the digital problem.

COUNCILMAN HARRISON: Right. And I guess that's the biggest problem with this application. Until the residents of Little Neck are united and want digital service, I guess what I'm hearing is a large majority of people that say the cellular phones using analog service is just fine with me and I'd rather have that then have a tower.

MARK WILLIAMSON: If I may respond for just a second. I think we take the position that under federal statutes that the digital players are entitled to the same playing field as the cellular players.

COUNCILMAN HARRISON: Under the law you may have rights that I'm not aware of, but under a conditional use permit, you're about to go down in flames.

J.A. at 50–51. At the conclusion of the hearing Councilman Harrison made one further statement regarding the application:

Again, I appreciate the problem, because its clearly one where maybe some day all of the residents of Little Neck will have to have digital, because analog service will no longer be the prevailing industry a the [sic] tower of this nature will have a much more urgent need. I guess in all these Conditional Use Permit Applications we have to weigh in the burdens placed on the community by the Applicant versus the benefit to be gained for the overall community, the overall city at large. After all, we are all elected to represent the City at large . . . and the burden is on the community, as evidenced by the speakers against this application tonight are clear, yet the benefits to the entire city are not. The only benefit to the City of Virginia Beach is just to Little Neck by filling a hole which exists in digital service and there's clearly not an overwhelming support for this application. It's been divisive. It's divided the Little Neck Peninsula and accordingly I would make a motion to deny the application.

J.A. at 56. Councilman Harrison's motion was seconded by Council Lady McClanan. The Council then voted unanimously to deny the application. No member of the City Council appears on the record as either mak-

7. From the transcript of the proceedings it does not appear that a vote on the deferral occurred.

ing any statement in favor of, or against, the application, or offering any explanation of the City Council's action, save Councilman Harrison.[8]

Plaintiffs contend in their brief, and Defendant has not disputed, that the only written notification of the denial they have received consisted of a copy of the agenda item containing the recommendations of the City Planning Commission with the word "Denied" rubber stamped at the bottom. As written evidence of the decision, Defendant cites a copy of the official minutes of the City Council meeting, which records Councilman Harrison's vote, Council Lady McClanan's second, and the names of all eleven City Council members voting to deny the application. This document contains no discussion of the reasons for the decision or the merits of the application. J.A. 122–23.

Plaintiffs filed this action on April 23, 1997, within the 30 day limit set out by 47 U.S.C. § 332(c)(7)(B)(v). Plaintiffs alleged Defendant violated three provisions of § 704 of the Telecommunications Act of 1996, codified at 47 U.S.C. § 332(c)(7), specifically § 332(c)(7)(B)(i)(I) (prohibiting regulations that unreasonably discriminate between service providers); § 332(c)(7)(B)(i)(II) (prohibiting regulations that prohibit the provision of wireless services) and § 332(c)(7)(B)(iii) (requiring decisions by local authorities to be in writing and supported by substantial evidence contained in a written record).[9]

---

**8.** Council Lady Strayhorn asked a general question about likely future developments in technology in regards to personal wireless systems. J.A. at 47–48. *Other than her question, and the questions regarding the deferral discussed supra note 6, no other City Council member made any statement related to this application.*

**9.** The relevant portions of § 704 of the Telecommunications Act of 1996 are:

(7) **Preservation of local zoning authority**
(A) **General authority**
Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.
(B) **Limitations**
(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—

## IV. Discussion

The intent of the Telecommunications Act of 1996 is clear. The Act is designed "to provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technology and services to all Americans and by opening all telecommunications markets to competition." H.R. Conf. Rep. No. 104–458, 104th Cong., 2d Sess. 113 (1996), 1996 U.S.C.C.A.N. 10, 124; *see also Paging, Inc. v. Bd. of Zoning Appeals for the County of Montgomery,* 957 F.Supp. 805, 807 (W.D.Va.1997); *Sprint Spectrum L.P. v. Jefferson County,* 968 F.Supp. 1457, 1465 (N.D.Ala.1997); *BellSouth Mobility, Inc. v. Gwinnett County,* 944 F.Supp. 923, 927 (N.D.Ga.1996). Wireless PCS technology is one of the advanced telecommunications services intended to be promoted by fostering competition in the industry. H.R.Rep. No. 104–204, 104th Cong.2d Sess. 94 (1996), 1996 U.S.C.C.A.N. 10, 60–61. In order to develop and expand the wireless market by expanding service into new areas, pro aiders must erect antenna. Recognizing that the siting of such facilities presents a number of problems, and in the interest of creating a uniform, national policy towards the siting of wireless facilities, the House of Representatives originally proposed giving the FCC the power to create national policies for wireless tower sites. H.R. Conf. Rep. No. 104–458,

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and
(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.
(ii) A State or local government ... shall act on any request ... within a reasonable amount of time ...
(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record ...
(v) Any person adversely affected by any final action ... by a State or local government or instrumentality thereof that is inconsistent with this subparagraph may, within 30 days ... commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis ...

47 U.S.C. § 332(c)(7).

104th Cong., 2d Sess. 207 (1996), 1996 U.S.C.C.A.N. 10, 124, 221–224. Instead, the statute as enacted generally preserved the authority of State and local zoning boards, while at the same time expressly placing substantive and procedural limitations on their powers to make zoning decisions regarding wireless towers.[10] *Sprint v. Jefferson County,* 968 F.Supp. at 1465; *BellSouth,* 944 F.Supp. at 927, *Western PCS II Corp. v. Extraterritorial Zoning Authority of the City and County of Santa Fe,* 957 F.Supp. 1230, 1235–36 (D.N.M.1997). The interpretation of these procedural and substantive limitations appears to be a matter of first impression in this Circuit.[11]

## A. Unreasonable discrimination among providers of functionally equivalent service

■ Section 704 of the Telecommunication Act states that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government ... shall not unreasonably discriminate among providers of functionally equivalent services." 47 U.S.C. § 332(c)(7)(B)(i) This provision was intended to increase competition in the wireless Market between all service providers, both digital and analog,[12] by removing barriers to market entry. *Western PCS II,* 957 F.Supp. at 1237. Congress contemplated that this provision would apply to individual application decisions when they stated: "[t]he intent of the conferees is to ensure that a State or local government does not in making a decision regarding the placement, construction, and modification of personal wireless services ... unreasonably favor one competitor over another."[13] H.R. Conf. Rep. No. 104–458, 104th Cong., 2d Sess. 208 (1996), 1996 U.S.C.C.A.N. 10, 124, 222. Plaintiffs contend that Defendant's refusal of their application

10. Defendant contends that Congress has not clearly manifested its intent to preempt certain areas of local zoning authority by placing limitations upon that power. *See Feikema v. Texaco, Inc.,* 16 F.3d 1408, 1413 (4th Cir.1994). The plain meaning of the statute, however, indicates otherwise:

> (7) **Preservation of local zoning authority**
> (A) **General authority**
> *Except as provided in this paragraph,* nothing in this chapter shall limit or affect the authority of a State or local government ... over decisions regarding the placement, construction, and modification of personal wireless facilities.
> (B) *Limitations*

47 U.S.C. § 332(c)(7) (emphasis added).

11. The Court notes that the Western District of Virginia addressed the Telecommunications Act of 1996 in *Paging, Inc.,* 957 F.Supp. 805. The question presented to Judge Kiser in *Paging, Inc.,* however, was a motion regarding a *Buford* abstention, and consequently the opinion discusses the interpretation of the Act only in passing. A number of District Courts and State courts in other Circuits have addressed the issue. *See, e.g., Sprint v. Jefferson County,* 968 F.Supp. 1457; *BellSouth,* 944 F.Supp. 923, *Western PCS II,* 957 F.Supp. 1230; *Illinois RSA No. 3, Inc. v. County of Peoria,* 963 F.Supp. 732, 746–747 (C.D.Ill.1997); *Sprint Spectrum, L.P. v. City of Medina,* 924 F.Supp. 1036 (W.D.Wash.1996); *AT & T Wireless PCS v. City of Chamblee,* no. 1:97cv1050 (unpublished) (N.D. Georgia 1997) (copy attached to Plaintiffs' brief); *OPM–USA–INC. v. Board of County Commissioners of Brevard County, Florida,* No. 97–408–CIV–ORL19 (unpublished) (M.D.Fla.1997) (copy supplied by

Plaintiff), *Sprint Spectrum, L.P. v. Town of West Seneca,* 172 Misc.2d 287, 659 N.Y.S.2d 687 (N.Y.Sup.Ct.1997); *Westel–Milwaukee Co., Inc. v. Walworth County,* 205 Wis.2d 244, 556 N.W.2d 107 (Ct.App.1996); *United States Cellular Corp. v. Brd. of Adjustment of the City of Des Moines, Iowa,* No. CL–000–70–195 (unpublished) (Iowa Dist.Ct.1996) (copy attached to Plaintiffs' brief).

12. The parties have stipulated that digital wireless PCS services provide "functionally equivalent services" to those of analog cellular telephone services for the purposes of 47 U.S.C. § 332(c)(7)(B)(i)(I).

13. Although it is not critical to the holding of this opinion, this Court believes that examining the legislative history of 47 U.S.C. § 332(c)(7), as both parties have done in their briefs, can be helpful in interpreting the statute. "[C]ourts properly give words the meaning which the legislature intended [they] should have in each instance." *NationsBank of North Carolina, N.A. v. Variable Annuity Life Insurance Co.,* 513 U.S. 251, 262, 115 S.Ct. 810, 816, 130 L.Ed.2d 740 (1995) *quoting Atlantic Cleaners & Dyers, Inc. v. United States,* 286 U.S. 427, 433, 52 S.Ct. 607, 608–09, 76 L.Ed. 1204 (1932); *see also District of Columbia v. Carter,* 409 U.S. 418, 420, 93 S.Ct. 602, 604, 34 L.Ed.2d 613 (1973) *quoting Puerto Rico v. Shell Co. (P.R.) Ltd.,* 302 U.S. 253, 258, 58 S.Ct. 167, 169, 82 L.Ed. 235 (1937) ("[w]ords generally have different shades of meaning, and are to be construed if reasonably possible to effectuate the intent of the lawmakers; and this meaning in particular instances is to be arrived at, not only by a consideration of the words

unreasonably favored existing analog providers over digital providers, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(I).

■ Ample evidence exists in the joint appendix that analog cellular service was available in the Little Neck peninsula. Any decision to deny digital service providers the means to extend coverage to the Little Neck peninsula would favor the existing service providers, at the expense of the newcomers. This would be contrary to the intent of the Act, which seeks to intensify competition in the industry and introduce advances in technology. *Sprint v. Jefferson County*, 968 F.Supp. at 1467. The fact that a decision has the effect of favoring one competitor, in and of itself, is rot actionable, however. *Id.* The question becomes whether, in making a decision that has the result of favoring one competitor over another, the governing body has acted reasonably. *Id.; Paging, Inc.*, 957 F.Supp. at 807–08. The actions of a governing body are reasonable if a legitimate basis for the contested action is presented.[14] *Sprint v. Jefferson County*, 968 F.Supp. at 1467–68, *citing Western PCS II*, 957 F.Supp. at 1238.

■ The only basis for the Defendant's actions that can be found in the record is offered by Councilman Harrison,[15] who asserted that the residents of the Little Neck Peninsula were satisfied with their current analog service and did not wish, or felt they needed, digital service. J.A. at 50. In his closing statement before his motion to deny the application, Councilman Harrison stated: "maybe some day all of the residents of Little Neck will have to have digital, because analog service will no longer be the prevailing industry a the [sic] tower of this nature will have a much more urgent need ... [t]he only benefit to the City of Virginia Beach is just to Little Neck by filling a hole which exists in digital service and there's clearly not overwhelming support for this application." J.A. at 56. Refusing a competitor entry into a market simply because other services already exist is squarely contrary to Congress' expressed intent to "accelerate rapidly private sector deployment of advanced telecommunications" and "open[ ] all markets to competition"[16] and cannot be considered a legitimate basis for their decision. Nor can the belief that residents of the area

---

themselves, but by considering, as well, the context, the purposes of the law, and the circumstances under which the words were employed."). This Court relies upon the conference report as the most persuasive evidence of legislative intent. *Austin v. Owens–Brockway Glass Container Inc.*, 78 F.3d 875 (4th Cir.1996), *citing Davis v. Lukhard*, 788 F.2d 973, 981 (4th Cir.), *cert. denied*, 479 U.S. 868, 107 S.Ct. 231, 93 L.Ed.2d 157.

14. The legislative history suggests that it would be reasonable for local zoning authorities "to treat facilities that create different visual, aesthetic, or safety concerns differently to the extent permitted under generally applicable zoning requirements, even if those facilities provide functionally equivalent services." H.R. Con. Rep. No. 104–458, 104th Cong.2d Sess. 208 (1996), 1996 U.S.C.C.A.N. 10, 124, 222.

15. Defendant's counsel urges the Court that the words of a single council member cannot be held to represent the intent of the whole. Had the City Council properly complied with the procedural requirements of § 704, see *infra*, or had the City Council left a more robust record, this argument might have more resonance with the Court. Counsel has not provided the court with any precedent on this matter, but the Court assumes counsel is referring to cases such as, e.g.

(*U.S. v. Thompson*, 452 F.2d 1333, 1345 (D.C.Cir. 1971), *cert. denied* 405 U.S. 998, 92 S.Ct. 1251, 31 L.Ed.2d 467 (1972)). *Thompson* held that the single statement of one Congressman inserted into the Congressional Record which was not contained in the record of statements made upon the floor, in committee records, or in the conference report could not be taken as conclusive evidence of Congressional intent when interpreting a statute. *Id.* at 1345–46; *see also Antolok v. United States*, 873 F.2d 369, 376–77 (D.C.Cir. 1989). Assuming *arguendo* that this group of cases applies to the situation at hand, it is clear to the Court that *Thompson* and its brethren stand for the proposition that the courts cannot ignore voluminous contrary evidence contained in the record to seize upon one statement that contains no indicia of reliability greater than a number of other contrary or inconsistent statements. In contrast, Councilman Harrison's comments were made in public, before the board as a whole, and are the *only* statements the City Council has placed on record. Given that the City Council unanimously approved his motion to deny upon his stated reasons, without dissent, comment, or clarification, the Court must assume Councilman Harrison spoke for the City Council as a whole.

16. H.R. Conf. Rep. No. 104–458, 104th Cong., 2d Sess. 113 (1996), 1996 U.S.C.C.A.N. 10, 124.

do not want the new digital service stand as a legitimate basis. *Western PCS II*, 957 F.Supp. at 1236. The Little Neck peninsula is a highly populated area of the City of Virginia Beach, and denying AT & T and PrimeCo the ability to compete in the area simply because contrary to Congressional intend, the residents do not want increased competition in telecommunications is, as a matter of law, unreasonable.[17] Consequently, the Plaintiffs' motion for summary judgment on this issue is **GRANTED.**

## B. Prohibiting the provision of personal wireless services

The second substantive prohibition of § 704 sets out that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government ... shall not prohibit or have the effect of prohibiting the provision of wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). Plaintiffs assert that the denial of the application, where Defendant clearly concedes that some gap in coverage exists over the Little Neck peninsula, has the effect of prohibiting the provision of digital wireless services to residents of the Little Neck peninsula and to those customers raveling through the area, in violation of § 332(c)(7)(B)(i)(II). Defendant urges that this provision was not intended to be applied to individual decisions, but rather to limit the ability of local authorities to issue blanket prohibitions on the placement, construction, or modification of wireless service facilities, or to institute policies that have the effect of generally prohibiting wireless facilities. Defendant argues that Congress has not demonstrated an intent to institute as broad a preemption of State and local authority as Plaintiffs would suggest.

Congress' comments on this provision are instructive. "It is the intent of this section that *bans or policies* that have the effect of banning personal wireless services or facilities not be allowed and that *decisions be made on a case-by-case basis.*" H.R. Conf. Rep. No. 104-458, 104th Conf., 2d Sess. 208 (1996), 1996 U.S.C.C.A.N. 10, 124, 222 (emphasis added). Compared with the discussion of unreasonable discrimination in the previous paragraph of legislative history (quoted *supra*), in which Congress speaks of *"a decision"* being considered for reasonableness, here Congress speaks of general *"bans and policies"* as being prohibited and specifically directs "decisions to be made on a case-by-case basis" instead. The interpretation put forward by the Plaintiffs would suggest that local authorities, when faced with an application for a facility that will serve a previously unserved area, cannot refuse that application without being in violation of § 332(c)(7)(B)(i)(II), as that refusal would have the effect of prohibiting service in that area. This interpretation cannot be reconciled with the legislative history of 47 U.S.C. § 332(c)(7)(B)(i)(I), as discussed *supra*. The legislative history clearly contemplates that under certain circumstances, assuming the requirements of 47 U.S.C. § 332(c)(7) were met, that local authorities could and would decline permit applications, even if that denial has the effect of favoring one competitor by keeping another out of the market. H.R. Conf. Rep. No. 104-458, 104th Cong., 2d Sess. 208 (1996), 1996 U.S.C.C.A.N. 10, 124, 222 ("[T]he conferees do not intend that if a State or local government grants a permit ... it must also grant a permit for a competitor's ... tower.") The interpretation urged by the Plaintiffs would relieve State and local governments of all authority over zoning decisions in regards to new entrants or un-

---

**17.** Defendant's reliance upon *Sprint Spectrum, L.P. v. City of Medina,* 924 F.Supp. 1036 (W.D.Wash.1996) is misplaced. The City of Medina instituted a one-time, six month moratorium on the issuance of new special use permits for wireless communications facilities, in order to gain time to create a cohesive policy on the siting of these facilities in light of the changes wrought by the Telecommunications Act. The Act had become law merely five days before the moratorium was instituted. The City did not deny applications, nor did it stop processing them; the

moratorium merely delayed final consideration of the application, as was expressly permitted by Washington State law. While recognizing that there were competitors already in the market who would be at least temporarily favored, the District Court for the Western District of Washington stated that "given the recent dramatic changes in the law and the market [Medina's] generally-applicable moratorium is consistent with [§ 332(c)(7)(B)(i)(I)]." *Id.* at 1040. Clearly the court felt Medina's actions were a reasonable response to a changing environment.

served areas, and such a broad preemption of State and local authority is not contemplated by § 332(c)(7)(A), which expressly reserves zoning authority to the State and local governments, with certain limitations. Under Plaintiff's argument, the limitation would swallow the rule. Consequently, the Court believes Defendant's arguments are persuasive on this issue, and finds that 47 U.S.C. § 332(c)(7)(B)(i)(II) is intended to limit only general bans or policies that prohibit or have the effect of prohibiting the provision of personal wireless services. Although the Court has found Defendant's stated reason for denying the conditional use permit application improper, there is nothing in the record to suggest, and Plaintiffs have not alleged, that this matter involves a general policy of the City Council to deny such applications. Accordingly, Defendant's motion for summary judgment on this issue shall be **GRANTED.**

## C. Written decision, supported by substantial evidence contained in a written record

In addition to the substantive limitations of § 704, the Telecommunications Act imposes a procedural duty upon State and local zoning authorities. "Any decision by a State or local government ... to deny a request ... [for] personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). The intent of this provision is clear, both on the face of the statute, and in the legislative history.

Title 47 U.S.C. § 332(c)(7)(B)(v) sets out that an person adversely affected by a decision of a State or local zoning board can commence in action in a court of competent jurisdiction. In order to accommodate and enable such judicial review, § 332(c)(7)(B)(iii) requires local authorities to create a proper record in order to allow a reviewing court to review the specific rationale for the denial, and determine if such rationale is consistent with the requirements of the Telecommunications Act. *Western PCS II,* 957 F.Supp. at 1236; *Illinois RSA No. 3, Inc. v. County of Peoria,* 963 F.Supp. 732, 743 (C.D.Ill.1997). The conference report clarifies this further, by stating "[t]he phrase 'substantial evidence

contained in a written record' is the traditional standard used for judicial review of agency actions." H.R. Conf. Rep. No. 104–458, 104th Cong., 2d Sess. 208 (1996), 1996 U.S.C.C.A.N. 10, 124, 223. Congress' plain and stated intention, therefor, is provide for robust judicial review of the decisions of State and local governing bodies, in order to ensure that the limitations upon their power created by the Telecommunications Act of 1996 are being complied with, and the intentions of the Act are furthered.

Plaintiffs assert that Defendant's rubber stamp denial and proffered minutes of the hearing do not constitute a "written denial," and that the City Council's decision is not supported by "substantial evidence contained in a written record."

Defendant's assertion that the Act requires no more than the decision itself in writing, devoid of any reasoning, findings, or assertions clearly cannot be correct. A rubber stamp with the word "denied," or a record of the names of City Council members voting against an application does not merely impede judicial investigation into a decision; it prevents it. Congress cannot have intended, when it expressly provided for judicial review in § 332(c)(7)(B)(v), that such judicial review could be hamstrung by the refusal of a local body to provide any reasoning or explanation for its actions. In fact, Congress had the foresight to recognize that exactly this type of obstructionism could be a problem when it created § 332(c)(7)(B)(iii), requiring State and local bodies to produce written decisions. To allow the City Council to satisfy this requirement through a rubber stamp, which imparts less information than the Plaintiff received during the verbal denial of the application, would render § 332(c)(7)(B)(iii) superfluous, and allow zoning authorities to avoid judicial review, contrary to Congressional intent. Nor can this requirement be satisfied by the production of the minutes of the hearing, or a transcript of the hearing. *Western PCS II,* 957 F.Supp. at 1236. These documents suffer from the same deficiencies as the rubber stamp. They impart no information to permit a reviewing court to ascertain the rationale behind the decision. *Id.* If Congress had intended the

raw transcript to be sufficient, there would have been no reason to enact § 332(c)(7)(B)(iii). Transcripts of hearings are properly part of the written record, but as the statute draws a distinction between the written decision and the written record, they can clearly not be the same document. 47 U.S.C. § 332(c)(7)(B)(iii) ("Any decision ... shall be in writing and *supported* by substantial evidence *contained* in a written record") (emphasis added).

 Congress intended that the requirements of § 332(c)(7)(B)(iii) lend themselves to review of zoning authority actions in the same traditional manner, and to the same extent that courts have long been reviewing agency actions. Conf. Rep. No. 104–458, 104th Cong., 2d Sess. 208 (1996), 1996 U.S.C.C.A.N. 10, 124, 223. In *Hobbs v. Clinchfield Coal Co.*, 45 F.3d 819 (4th Cir. 1995) the Fourth Circuit reviewed the decisions of an administrative law judge ("ALJ") under the "substantial evidence" standard. In upholding the decision of the ALJ, the court noted "[t]he ALJ set forth reasons why he attributed greater weight to certain medical opinions, and he specifically addressed each medical opinion which disagreed with his ultimate opinion." *Id.* at 820. Without a written decision setting out the reasons and the rationale for a ruling, a court cannot find those decisions are supported by "substantial evidence," regardless of the contents of the record. *Arnold v. Secretary of Health, Education and Welfare*, 567 F.2d 258, 259 (4th Cir.1977) ("Unless the [agency] has analyzed all evidence and has sufficiently explained the weight ... given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." (citation omitted)). Defendant's counsel asserts that Defendant denied the application be-

cause of concerns for the compatibility of the antennas with the neighborhood, particularly in regards to aesthetic and visual impacts. Even if this reason had been contained in a written decision or, for that matter, had been expressed as a concern by any member of the City Council, this conclusory statement would be insufficient. "A bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court." *Jordan v. Califano*, 582 F.2d 1333, 1335 (4th Cir.1978); *Sprint v. Jefferson County*, 968 F.Supp. at 1468–69. The danger in accepting conclusory statements without question is that "conclusory ... determinations may conceal arbitrariness." *Jordan* at 1335. This Court need not determine at this time if a decision set out by local authorities must be as detailed or as technical as those required in *Hobbs, Arnold,* or *Jordan;* however, clearly more than a rubber stamp or voting records is required. At minimum, local authorities must issue rulings in written form, setting out the reasons for the decision and the evidence that led to the decision. *Illinois RSA*, 963 F.Supp. at 741; *Western PCS II*, 957 F.Supp. at 1236; *see also Sprint v. Jefferson County*, 968 F.Supp. at 1458–69.

 Despite the fact that no written decision was issued in the instant case, and the fact that the record contains no record of any reasoning offered by any member of the City Council, save for the improper reason cited *supra*, Defendant urges that the Court may find that the City Council refused the application on the basis of the incompatibility of the antennas with the neighborhood, particularly in regard to the visual and aesthetic impact of the towers.[18] Defendant bases this argument largely upon one statement by a member of the public contained in the record, and urged during the hearing that this statement alone would be enough for the Court to find substantial evidence existed to justify the City Council's decision.[19] Appar-

---

18. The Court notes that under Virginia law, such grounds would be insufficient to justify the refusal of the application, independent of any concerns regarding the Telecommunications Act of 1996. "[A zoning authority] cannot limit or restrict the use which a person may make of his property under the guise of its police power where the exercise of such power would be justified solely on aesthetic considerations." *Bd. of*

*Supervisors of James County v. Rowe*, 216 Va. 128, 145, 216 S.E.2d 199, 213 (Va.1975) *quoting Kenyon Peck v. Kennedy*, 210 Va. 60, 64, 168 S.E.2d 117, 120–21 (Va.1969).

19. Counsel for Defendant makes the meritless argument that this Court should ignore the statements of a member of the City Council, made in public before the body as a whole in favor of his

ently, in the place of a written record supported by substantial evidence, Defendant would have this Court pour through the raw transcript, searching for anything that suggests reasons the City Council *might* have chosen to take the action it did. The Court does not believe this is what Congress intended when it provided for judicial review, and this approach contradicts Supreme Court precedent on the "substantial evidence" standard.

In *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), the Supreme Court discussed the "substantial evidence" standard, and discussed the fact that certain Circuits, in interpreting early Supreme Court precedence on the issue, had believed that the requirements of "substantial evidence" were satisfied when "the reviewing court could find in the record evidence which, when viewed in isolation, substantiated the Board's findings." *Id.* at 478, 71 S.Ct. at 459. The Supreme Court expressed doubt that this had ever been the correct interpretation; however, the point was moot, in that Congress had made it clear that the "substantial evidence" standard to be used when reviewing agency decisions required considering the entire record, including the evidence contrary to the reasoning of the decision.[20] *Id.* at 487–88, 71 S.Ct. at 463–65.

▬▬▬ The entire record, then, must be examined to determine if the decision is supported by substantial evidence. "[S]ubstantial evidence is more than a mere scintilla.

It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 477, 71 S.Ct. at 459; *see also Cox v. Shannon–Pocahontas Mining Co.*, 6 F.3d 190, 192 (4th Cir.1993); *Vance v. NLRB*, 71 F.3d 486, 489–90 (4th Cir.1995); *accord Virginia Real Estate Commission v. Bias*, 226 Va. 264, 308 S.E.2d 123, 125 (Va.1983). Assuming, *arguendo*, that it would be proper for the Court to assign to the City Council reasons for its decision that were never expressed in any written decision or in the statements of City Council members during the proceedings, the evidence, cited by Defendant in support of its decision does not rise to the level of substantial evidence.

Defendant asserts that the substantial evidence for its putative denial on aesthetic grounds is contained in statements of members of the public opposed to the conditional use permit, the height of the towers, from the report of the surrounding area, and from their own knowledge, and from the vague assertion of the City Council's knowledge of "all other facts and circumstances."[21] The Court notes that the items cited by the Defendant are not entirely clear in their support of the Defendant's position. The site report and comprehensive plan Defendant refers to are contained within the report prepared by City Planning staff, which recommends approval of the project, and contains the positive evacuation quoted *supra*.[22] The statements of the members of the public opposed to the tower are at times inconsis-

---

motion to dismiss, such motion then being adopted unanimously without comment, as representing the reasoning, or any part of the reasoning, behind the City Council's denial of Plaintiffs' application. Instead, counsel argues, this Court should embrace the statements of a member of the public, John W. Haven, whose comments are quoted at length in the Defendant's brief without attribution. Mr. Haven is not a member of the City Council, he did not move to deny the motion, and he did not vote on the application, yet Defendant feels he speaks for the City Council and states their reasons for denying the application. This Court declines to follow Defendant's suggestion, and will instead follow the directives of the Fourth Circuit and "scrutinize the record as a whole." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir.1974).

20. "Whether or not it was ever permissible for courts to determine the substantiality of evidence supporting a ... decision merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn, the new legislation definitively precludes such a theory of review and bars its practice. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp.*, 340 U.S. at 488, 71 S.Ct. at 465.

21. Defendant's Brief at 15–16.

22. J.A. at 1–10.

tent with Defendant's stated position.[23] The Defendant gives no indication of how these inconsistencies were addressed, or why the Defendant did not find the comprehensive report of its own professional Planning staff, the recommendations of the City Planning Committee, the report of the property appraisal firm, the architectural drawings, the computer generated illustrations, and the evaluation of alternative sites convincing. Considering the record as a whole, the Court finds that the evidence cited in support of the City Council's nominal reason for denial amounts to little more than what the District Court for the District of New Mexico called "generalized concerns ... [that] do not constitute 'substantial evidence' to support the denial."[24] *Western PCS II*, 957 F.Supp. at 1236–37; *see also BellSouth*, 944 F.Supp. at 928, *Illinois RSA*, 963 F.Supp. at 745. Consequently, the Court finds that, *had* Defendant chosen to decline the application based upon perceived compatibility issues, substantial evidence would not have appeared in the written record to justify such a finding.

Accordingly, as Defendant has failed to produce a written decision, supported by substantial evidence contained in a written record, Plaintiffs' motion for summary judgement is **GRANTED** on this issue.

## V. Remedy

▮ Plaintiff has requested relief in the form of a writ of mandamus directing Defendant to approve the application or, in the alternative, declaratory judgment that the decision of the City Council to deny Plaintiff Lynnhaven United Methodist Church's application for a conditional use permit is void accompanied by a mandatory injunction directing the Defendant to approve the application. Defendant asserts that remand to the City Council of the City of Virginia Beach with directions to make formal findings would be more appropriate. The Court does not agree that remand is appropriate in these circumstances, and consequently will grant Plaintiffs' request for injunction.[25] *Illinois RSA*, 963 F.Supp. at 746–47; *cf. BellSouth*, 944 F.Supp. at 929 (granting mandamus); *Western PCS II*, 957 F.Supp. at 1239–40 (mandamus); *Sprint v. Jefferson County*, 968 F.Supp. at 1469 (mandamus).

Title 47 U.S.C. § 332(c)(7)(B)(v) directs that the Court shall decide this action on an expedited basis. This mandate alone compels the Court to decline to remand, as the

23. Comments of Everett Grass, J.A. at 55 ("[H]ey, we don't see it from where we are at. We won't even see it when we drive, because we don't go back that far."). Other members of the public also commented on the perceived health risks from transmissions, which is an improper basis for regulation under 47 U.S.C. § 332(c)(7)(B)(iv). Comments of John Haven, J.A. at 54–55. Also commented upon was the preference of residents for existing services, which the Court discussed *supra* as being improper. Comments of Jack McNeill, J.A. at 55–56.

24. Defendant notes that under Virginia law, "a legislative body is presumed to have been cognizant at the time it acted of all existing facts and circumstances bearing upon the public policies and private rights relating to their action." *Indus. Dev. Auth. of the City of Richmond v. La France Cleaners and Laundry Corp.*, 216 Va. 277, 282, 217 S.E.2d 879, 883 (Va.1975). The Defendant interprets this case as standing for the proposition that the City Council may support its denial of the conditional use permit upon unspecified "all [other] existing facts and circumstances" not contained in the record. Defendant's Brief at 16. The argument that unknowns, unspecified, unstated evidence not contained in the written record can serve as "substantial evidence" is squarely at odds with both the intent and the plain meaning of 47 U.S.C. § 332(c)(7)(B)(iii). Congress' clear and manifest purpose in enacting § 332(c)(7) was to place certain limitations and requirements upon State and local zoning decisions, and to preempt State and local law to that extent. *See supra* note 10. The Court is not convinced of Defendant's interpretation of *La France*, noting that the cited opinion clearly contemplates that statutory mandates may change the rule. *Id.* ("[a]lthough legislative bodies sometimes choose to conduct hearings and investigations in aid of legislation ... *absent a constitutional or statutory mandate*, they are not obligated to do so.") (emphasis added). Regardless, to the extent that *La France* allows State and municipal bodies in Virginia to rely upon evidence not contained in the written record of proceedings, it is inconsistent with the words of the statute, "evidence *contained in a written record*," 47 U.S.C. § 332(c)(7)(B)(iii), and with the intent of Congress to provide for robust judicial review, and is therefore preempted by 47 U.S.C. § 332(c)(7). U.S. Const. art. VI.

25. The court notes that the writ of mandamus has been abolished in Federal District Court. Fed.R.Civ.P. 81(b).

City Council has been found to be in violation of a substantive provision of the Act, and has clearly had an opportunity to produce a written decision supported by substantial evidence, as required by § 704, and failed to do so. *Illinois RSA,* 963 F.Supp. at 747. Remand would further delay proper resolution of this issue, contrary to the intent of the Act.[26] *BellSouth,* 944 F.Supp. at 929. In addition, however, remand to a body that has already demonstrated its lack of concern for the requirements of federal law,[27] and has suggested that further applications or debate, even for alternative sites, would "mean nothing"[28] would be a pointless gesture. *Western PCS II,* 957 F.Supp. at 1239–40. The City Council of the City of Virginia Beach has indicated its intentions, and those intentions are contrary to the mandates and purposes of § 704 of the Telecommunications Act of 1996.

For the foregoing reasons, Plaintiffs' motion for summary judgment is **GRANTED** with respect to violations under 47 U.S.C. § 332(c)(7)(B)(i)(I) and 47 U.S.C. § 332(c)(7)(B)(iii). Defendant's motion for summary judgment is **GRANTED** with respect to alleged violations under 47 U.S.C. § 332(c)(7)(B)(i)(II). It is **ORDERED** and **ADJUDGED** that the decision of the City Council of the City of Virginia Beach with respect to Item #41941, ordinance upon application of Lynnhaven United Methodist Church for a conditional use permit for two monopole communication towers is null and void.

It is further **ORDERED** that the City Council of the City of Virginia Beach shall approve the application of Lynnhaven United Methodist Church for a conditional use permit for two monopole communication towers, as proposed in its petition submitted to the City Council of the City of Virginia Beach on March 25, 1997, and shall grant such conditional use permit within **twenty (20)** days of the date of this order. The City Council of the City of Virginia Beach shall remove any further impediments to the Plaintiffs' lawful construction of the monopole communications towers.

The Court **DENIES** the request for attorney's fees, as the Telecommunications Act makes no provision for the award of such fees, and Defendants have not been shown to have acted in bad faith.

It is so **ORDERED.**

**26.** Remand would result in precisely the unnecessary delay and repetitious legal proceedings Congress intended to avoid when it provided for immediate, expedited judicial review. *See* H.R. Conf. Rep. No. 104–458, 104th Cong.2d Sess. 209 (1996), 1996 U.S.C.C.A.N. 10, 124, 223 (The intent of § 332(c)(7)(B)(v) is to allow immediate recourse to judicial review, without requiring the exhaustion of State remedies).

**27.** Exchange between Mark Williamson, counsel for PrimeCo, and Councilman Harrison, J.A. at 51, quoted *supra.*

**28.** Comments of Councilman Harrison, J.A. at 45–46, quoted *supra.*